Frank KERSEY, Petitioner,

v.

STATE of Tennessee, Respondent.

Supreme Court of Tennessee.

June 16, 1975.

**140**

Conrad Finnell, Finnell, Thompson, Scott & Logan, Cleveland, for petitioner.

R. A. Ashley, Jr., Atty. Gen., William C. Koch, Jr., Asst. Atty. Gen., Nashville, Richard Fisher, Dist. Atty. Gen., Cleveland, for respondent.

## OPINION

HENRY, Justice.

We granted certiorari to take a fresh look at the "Allen" or "dynamite" charge, and to clarify certain matters incidental thereto.

### I.

Petitioner was found guilty of involuntary manslaughter and sentenced to confinement in the State Penitentiary for not less than one (1) nor more than five (5) years. His conviction was upheld by the Court of Criminal Appeals.

The record reflects that after the jury had deliberated about one hour and forty-five minutes it returned to the courtroom and, in response to questions by the trial judge, announced that it had not reached a verdict but was making progress. After discussing arrangements for the evening meal the jury left the courtroom. It is not clear from the record whether the jury deliberated further or went out to eat. The record simply shows that "the jury, after deliberating further after supper", returned and reported that it had not reached a verdict and "(i)t looks like we are not going to, your Honor." In response to a question by the trial judge, the foreman reported that the jury was hung on the question of guilt or innocence. In response to a direct question on the division, the foreman reported the jury to be hung eleven to one.

Immediately the trial judge, *sua sponte*, charged the jury as follows:

> While the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of your fellows, yet you should examine the questions submitted with candor and with a proper regard and *difference*[1] (sic) to the opinions of each other. It is your duty to decide the case if you can conscientiously do so. *You should listen with a disposition to be convinced to each other's arguments.* If the larger number are for conviction or acquittal, a dissenting juror should consider whether his doubt was a reasonable one which made no impression on the minds of so many other men, equally honest, and equally intelligent with himself. The jury should not go contrary to their convictions, but they should properly give heed to the opinions of their fellow jurors and by reasonable concessions reach a conclusion which although not originally entertained by any of them, nevertheless, may be one to which all can scrupulously adhere. *In other words, the minority should listen to the views of the majority with the disposition of being convinced.* Now, with that addition we will work a few minutes longer. (Emphasis supplied).[2]

---

1. The use of the word, *difference* as opposed to *deference* as is contained in the charge in *Allen v. United States, infra*, resulted from an error originating in *Simmons v. State, infra*.

2. This charge was taken verbatim from *Simmons v. State, infra*.

His Honor, the trial judge, apparently had faith that this "dynamite" charge would blast the jury into a unanimous verdict. At least, he so indicated by stating "we will work a few minutes longer."

Immediately upon the conclusion of this supplemental charge, the record reflects that counsel for the defendant tendered a special request as follows:

Defendants further request that the court charge the jury as follow (sic):

at close of 7:55 report of 11–1 deadlock

Irrespective of anything I have said, each of you must believe beyond a reasonable doubt that the defendant is guilty. If any juror has a reasonable doubt he should vote for an acquittal.

This special request was denied by the trial judge.

Thereafter, the trial judge instructed the jury to return to the jury room and advised that "we will send for you in a few minutes."

Thereafter, at a time not disclosed[3] by the record the jury returned and reported that it had reached a verdict.

## II.

■ We first address the matter of the trial judge making inquiry as to the division of the jury and hold that this is not proper practice. Until the jury shall have reached a verdict, no one—not even the trial judge—has any right, reason or power to question the specifics of its deliberative efforts. We hold that such inquiry is error. *Brasfield v. United States*, 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345 (1926). Where this inquiry is accompanied by the *Allen* charge or any of its variations, the error is compounded. For text and cases relating to an inquiry as to the division of the jury, see 76 Am.Jur.2d, Trial, Sec. 1058 and E. Ledford,

Defusing the Dynamite Charge: A Critique of Allen and its Progeny, 36 Tenn.L.Rev. 749 (1969).

■ Under the inherent and the statutory supervisory power of this Court, we advise the trial bench that when a jury's deliberations have not produced a verdict, and it returns to the courtroom and so reports, the presiding judge should admonish the jury, at the very outset, not to disclose their division or whether they have entertained a prevailing view. The only permissive inquiry is as to progress and the jury may be asked whether it believes it might reach a verdict after further deliberations. If the trial judge feels that further deliberations might be productive, he may give supplemental instructions in accordance with subsequent portions of this opinion. See *State v. Hutchins*, 43 N.J. 85, 202 A.2d 678 (1964).

## III.

The so-called *Allen* or *dynamite* charge had its origin in *Commonwealth v. Tuey*, 62 Mass. 1 (1851). It achieved national prominence and the name by which it is generally known through *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), wherein the court paraphrased the charge of the trial judge as follows:

. . . These instructions were quite lengthy, and were, in substance, that in a large proportion of cases absolute certainty could not be expected; that although the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of his fellows, yet they should examine the question submitted with candor and with a proper regard and *deference* to the opinions of each other; that it was their duty to decide the case if they could conscientiously do so; that they should listen,

---

3. Trial judges should insure that court reporters indicate time intervals at appropriate places during the progress of a trial.

Particularly should the movements and actions of the jury be chronicled.

*with a disposition to be convinced, to each other's arguments*; that, if much the larger number were for conviction, a dissenting juror should consider whether his doubt was a reasonable one which made no impression upon the minds of so many men, equally honest, equally intelligent with himself. If, upon the other hand, the majority was for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgment which was not concurred in by the majority . . . . (Emphasis supplied) 164 U.S. at 501, 17 S.Ct. at 157, 41 L.Ed. at 530.

### IV.

The Tennessee version of the *Allen* charge originated in *Simmons v. State*, 198 Tenn. 587, 281 S.W.2d 487 (1955), wherein this Court approved a charge identical with that given in the case at bar, as hereinabove set forth.

The Court cited as authority for its holding, two cases. The first of these was *High v. Lenow*, 195 Tenn. 158, 258 S.W.2d 742 (1953). The crux of the Court's holding in *Lenow* is as follows:

The jury should not go contrary to their convictions but they should properly give heed to the opinions of their fellow jurors, and by reasonable concessions reach a conclusion which although not originally entertained by any of them, nevertheless may be one to which all can scrupulously adhere. 258 S.W.2d at 745.

*Lenow* supports only a limited portion of the *Simmons* charge. Certainly, it does not provide authority for the strong admonition of *Simmons* that "the minority should listen to the views of the majority with the disposition of being convinced."

The other case cited in *Simmons* is *Allen v. United States, supra,* but when *Allen* is analyzed in the light of the *Simmons* charge it is substantially less offensive in that it too, stops short of requiring, *in haec verba,* that the minority should listen to the views of the majority with the disposition of being convinced although this is the import of the *Allen* charge.

The *Simmons* charge was approved in principle in *Hopper v. State,* 205 Tenn. 246, 326 S.W.2d 448 (1959). In *Weston v. State,* 506 S.W.2d 946 (Tenn.Cr.App.1973), the Court of Criminal Appeals followed *Simmons* and approved the charge; however, it noted:

(T)here appears to be a growing body of opinion that the *Allen* charge itself is coercive, and that a different instruction should be given a deadlocked jury. 506 S.W.2d at 948.

### V.

Reference to various text treatments will validate the assertion that the *Allen* charge, in one form or another, has tantalized the criminal defense bar, tortured the trial bench and tormented the appellate courts throughout the nation.[4]

The *Allen* charge has come under widespread criticism. Mr. Justice Clark has stated:

*Allen* is dead and we do not believe in dead law. Clark, Progress of Project Effective Justice—A Report on the Joint Committee, 47 J.Am.Jud.Soc'y., 88–90 (1963).

The Fifth Circuit, in *Green v. United States,* 309 F.2d 852 (5th Cir. 1962) has asserted:

(t)here is small, if any, justification for its use. Id. at 854.

---

**4.** See E. Ledford, Defusing the Dynamite Charge; Critique of *Allen* and Its Progeny, 36 Tenn.L.Rev. 749 (1969); ABA Standards, Trial by Jury, 5.4 (1968); 76 Am.Jur.2d, Trial, Sec. 1060 et seq.; Annotation, Instructions urging dissenting jurors in Criminal case to give due consideration to opinion of majority, 100 A.L.R.2d 177 and later case service.

Judge Brown, in his dissenting opinion in *Huffman v. United States*, 297 F.2d 754 (5th Cir. 1962), stated in part:

I think a mistrial from a hung jury is a safeguard to liberty. In many areas it is the sole means by which one or a few may stand out against an overwhelming contemporary public sentiment. Nothing should interfere with its exercise. In the final analysis the Allen charge itself does not make sense. All it may rightfully say is that there is a duty to consider the views of others but that a conscientious person has finally the right and duty to stand by conscience. If it says that and nothing more it is a superfluous lecture on citizenship. If it says more to declare that there is a duty to *decide,* it is legally incorrect as an interference with that rightful independence. Id. at 759.

We concur in this statement of Judge Brown.

In an en banc hearing, the Court of Appeals for the Fifth Circuit, in *United States v. Bailey,* 480 F.2d 518 (5th Cir. 1973), considered the propriety of the *Allen* charge. Six judges of that Circuit, in a concurring opinion, referred to it as "this abusable relic" and pointed out that its use "is an invitation for perennial appellate review".

In *State v. Thomas,* 86 Ariz. 161, 342 P.2d 197 (1959), the Arizona Supreme Court held:

We are convinced that the evils far outweigh the benefits and decree that its use shall no longer be tolerated and approved by this court. 342 P.2d at 200.

The Montana Supreme Court in *State v. Randall,* 137 Mont. 534, 353 P.2d 1054, 100 A.L.R.2d 171 (1960), in holding that a variation of the *Allen* charge was reversible error, stated:

The inevitable effect of the instruction would be to suggest to the minority members of the jury that they ought to surrender their own convictions and follow the majority. A vibrant, pulsating, intel-

ligent minority is a part of our American way of life. The views of the minority, often with the passage of time, become the majority view. . . .: The majority view on any given subject is not always the correct view. 353 P.2d at 1058.

The Third Circuit, in *United States v. Fioravanti,* 412 F.2d 407 (3rd Cir. 1969), said in part:

Hereafter, in this circuit, trial judges are not to give instructions either in the main body of the charge or in the form of a supplement that direct a juror to distrust his own judgment if he finds a large majority of the jurors taking a view different from his. Such an instruction will be deemed error, normally reversible error. Conceivably, in very extraordinary circumstances the error may be found so inconsequential as to avoid the necessity of reversal on appeal. But hereafter this Court will not let a verdict stand which may have been influenced in any way by an *Allen* charge.

We predicate our decision on the basis of the potential for prejudice its future use may generate and the profound difficulty in confining its use within just and equitable bounds. Its peccancy comes from its tendency to hurt, from its tendency to erode the juror's capacity for meaningful group deliberation with its concomitant arguing, influencing, and exchange of views. As a prophylactic device to eliminate future vexation, our prohibition shall have prospective application only in those jury trials which shall be conducted hereafter. Id. at 420.

The Seventh Circuit, in *United States v. Brown,* 411 F.2d 930 (7th Cir. 1969), acting pursuant to its supervisory power, in effect banned the *Allen* charge and required that district courts within that circuit, when faced with deadlocked juries, comply with the standards suggested by the American Bar Association's Trial by Jury publication. (See *supra*). In *United States v. Silvern,* 484 F.2d 879 (7th Cir. 1973), this Circuit

suggested a precise charge as outlined in the ABA Commentary to Sec. 5.4 of the Standards for Trial by Jury (see *supra*), and directed that "unless and until we suggest any further change in the future, the instruction quoted in this opinion is the only deadlocked instruction to be given".

The District of Columbia Circuit, in *United States v. Thomas,* 146 U.S.App.D.C. 101, 449 F.2d 1177 (1971), banned the *Allen* charge and adopted the instructions recommended by the ABA.

Finally, in the case under consideration, Judge Russell, writing for the Court of Criminal Appeals, stated:

> An instruction that coerces a jury into returning a verdict is bad, and we have taken note of the body of legal thought which holds that the "Allen" charge itself is coercive. (citing *Weston, supra*).

## VI.

■ The right of trial by jury may not be impaired or encumbered with conditions which, in their practical operation, may embarrass or violate the free and full enjoyment of the right. *Neely v. State,* 63 Tenn. 174 (1874).

■■ In our view the *Allen* charge and the *Allen-Simmons* charge operate to embarrass, impair and violate the constitutional right of trial by jury. Any undue intrusion by the trial judge into this exclusive province of the jury, is an error of the first magnitude. We recognize that the trial judge has a legitimate concern in the administration of justice and that he labors under a duty to lend guidance to the jury through instructions as to the governing principles of the law. However, when the effort to secure a verdict reaches the point that a single juror may be coerced into surrendering views conscientiously entertained, the jury's province is invaded and the requirement of unanimity is diluted.

We view these charges as being tantamount to a judicially mandated majority verdict which is impermissible under Tennessee law.

Moreover, there is an inherent inconsistency in these charges in that the dissenters are urged to reconsider their verdict and simultaneously are reminded to make their decisions based upon their own convictions which they are cautioned not to sacrifice. They ask the dissenters to consider shifting their opinions, because the majority is of a different persuasion. We find no merit to any suggestion that might necessarily makes right. We take note of the classic lines:

> NOR IS THE PEOPLE'S JUDGMENT ALWAYS TRUE. THE MOST MAY ERR AS GROSSLY AS THE FEW.[5]

## VII.

■ We conclude that the interests of justice demand the rejection of the "dynamite" charge. Under the statutory and inherent supervisory power of this Court, we direct that trial courts in Tennessee, when faced with deadlocked juries, comply with the ABA Standards Relating to Trial by Jury, Sec. 5.4, which are as follows:

5.4 Length of deliberations; deadlocked jury.

(a) Before the jury retires for deliberation, the court may give an instruction which informs the jury:

(i) that in order to return a verdict, each juror must agree thereto;

(ii) that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;

(iii) that each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;

5. J. Dryden, Absalom and Achitophel.

(iv) that in the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and

(v) that no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.

(b) If it appears to the court that the jury has been unable to agree, the court may require the jury to continue their deliberations and may give or repeat an instruction as provided in subsection (a). The court shall not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.

(c) The jury may be discharged without having agreed upon a verdict if it appears that there is no reasonable probability of agreement.

■ The instruction contemplated in Sec. 5.4(a) may be given as a part of the main charge and should be given in the following form:

The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

If given as a part of the main charge, it may be repeated should a deadlock develop.

Judicial economy and uniformity demand these results. Strict adherence is expected and variations will not be permissible.

 We hold that the charge given in this case was prejudicial.

The judgment of the Court of Criminal Appeals is reversed and this case is remanded for a new trial.

FONES, C. J., and COOPER, BROCK and HARBISON, JJ., concur.