Kenneth R. JOHNSON and Ronda Johnson, Plaintiffs/Appellants,

v.

William E. HARDIN, M.D. and Family Medicine Associates, Defendants/Appellees.

Supreme Court of Tennessee,
at Nashville.

July 15, 1996.

Steve North, Madison, Daniel D. Warlick, Warlick & Todd, Nashville, for Appellants.

Robert L. Trentham, Mark Tyler Seitz, Trabue, Sturdivant & DeWitt, Nashville, for Appellees.

---

## OPINION

WHITE, Justice.

In this case plaintiffs contend that the trial court's unauthorized "dynamite charge" to the deadlocked jury requires that the judgment be set aside and a new trial granted. Defendants, however, urge that we should sustain the Court of Appeals' dismissal of this appeal based on plaintiffs' failure to comply with Rule 24, Tennessee Rules of Appellate Procedure. For the reasons discussed below, we conclude that the intermediate court's dismissal of the appeal was error and that the case must be remanded for a new trial because the trial court's instruction to the deadlocked jury violated Tennessee law.

## I.

Kenneth R. Johnson[1] and his wife, Ronda, filed a complaint alleging that William E. Hardin, a physician at Family Medicine Associates in Hendersonville, Tennessee, was negligent in his failure to diagnose and treat Mr. Johnson's rectal cancer. The Johnsons sought three million dollars in damages for emotional and physical pain, disfigurement, loss of employment, medical expenses, decreased chance of survival, and loss of consortium.

On October 18, 1995, after an eight-day trial, the jury began its deliberations. At 9:32 p.m. on that day, the jury returned to the court room, and the judge, *sua sponte,* recharged Tennessee Pattern Jury Instruction 15.22.[2] The next afternoon, at 1:25 p.m., the jury returned once again. The foreperson's note to the judge indicated that the jury was deadlocked. It further stated, "I can not take it any more." The trial judge polled each juror about the usefulness of further deliberations. Nine jurors replied that the jury would be unable to reach a verdict, two expressed uncertainty, and another thought that further deliberations could produce a verdict. One juror wept throughout the entire colloquy. After making a series of statements to the jury, the judge asked if the jurors were willing to go to lunch and then return to the jury room to formulate an "advisory" opinion.[3] The jury agreed and at 3:30 p.m. returned with a note written on the back of the special verdict form stating that defendant Hardin was not negligent.

The trial judge denied plaintiffs' oral and written motions for mistrial and entered judgment for defendants. Plaintiffs' motion for new trial was denied and they appealed.

On the day after the notice of appeal was filed, plaintiffs' counsel received a letter from

---

1. Mr. Johnson was hospitalized during January and February. He died in March of 1995.

2. The trial court charged the jury as follows:

 THE COURT: I do want to say this, for you to sleep on this. It won't take me a minute or two, one instruction. A verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous. It is your duty as jurors to consult with one another and to deliberate with a view of reaching an agreement if you can do so without violence to your individual judgment.

 Each of you must decided the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberation, do not hesitate to re-examine your own views and change your opinion if convinced that it is erroneous, but do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict.

 So, I'll just say that for you to go to bed tonight and say your prayers, and you can remember some of that. You have all been very good listeners, and I know you are certainly sincere and conscientious or you wouldn't have stayed this late. Thank you.

 If you will come back in the morning at 10:00, and we will see you as I have indicated. All right.

3. The full text of the trial judge's remarks are included in Part III of this opinion.

the clerk of the trial court notifying counsel that he had ten days to designate portions of the record to be included on appeal. Counsel immediately notified the clerk by telephone that the record was complete and should be transmitted to the Court of Appeals.

Defendants filed a motion under Tennessee Rules of Appellate Procedure 26(b) seeking to dismiss the appeal for failure to file a transcript. Two days later, the clerk of the trial court filed the technical record which included the motion for new trial with attached transcript portions. Plaintiffs responded to defendants' motion, pointed out that the relevant transcript and jury charge had been filed with the trial court and included within the technical record, and requested permission to file late a designation of a partial transcript. The Court of Appeals ruled that the portion of the transcript contained in the technical record was not part of the record on appeal and that plaintiffs had not demonstrated good cause for an extension of time in which to file a transcript. The intermediate court gave plaintiffs ten days to decide whether to proceed on the technical record alone.

Plaintiffs then requested permission under Rule 24(e) to supplement the record with the appropriately certified portion of the transcript already contained in the technical record. The Court of Appeals denied the motion, without prejudice, noting that the trial court must order, certify, and approve any supplementation to the record. After a hearing, the trial court granted the request and authenticated the partial transcript as certified by the trial court clerk.

Plaintiffs renewed the motion to supplement the record and attached the trial court's order and the certified, authenticated partial transcript. The Court of Appeals denied the motion to supplement the record and dismissed the case for failure to designate a partial transcript as required by Rule 24(b).

## II.

Prior to July 1, 1979, practice and procedure in Tennessee appellate courts were governed by scattered statutory provisions and by the rules and decisions of the appellate courts. Tenn. R.App. P. 1, Adv. Comm'n Comment. A principal purpose of the new Tennessee Rules of Appellate Procedure was to replace the often complex and technical rules with a "simplified, coherent, and modern body of law." *Id.*

Rule 1 of those rules requires that "[t]hese rules shall be construed **to secure the just, speedy, and inexpensive determination of every proceeding on its merits.**" Tenn. R.App. P. 1 (emphasis added). The general policy of the rules, as suggested by the Advisory Commission and interpreted by the courts, emphasizes reaching a just result and disregarding technicality in form. *See generally Bradshaw v. Daniel,* 854 S.W.2d 865, 869 (Tenn.1993); *Davis v. Sadler,* 612 S.W.2d 160, 161 (Tenn.1981); *Wallace v. Wallace,* 733 S.W.2d 102, 106 (Tenn.App.), *perm. to appeal denied,* (Tenn.1987); Tenn. R.App. P. 1, Adv. Comm'n Comment. Consequently, once a timely notice of appeal is filed, the rules should not erect unjustified technical barriers which prevent consideration of the merits of the appeal.

■ The rules of appellate procedure provide courts with wide discretion and substantial flexibility. *Huskey v. Crisp,* 865 S.W.2d 451, 455 (Tenn.1993). An appellate court, "[f]or good cause, including the interest of expediting decision upon any matter, ... may suspend the requirements or provisions of [the] rules in a particular case...." Tenn. R.App. P. 2.[4] The rules may be suspended upon motion of a party, or upon the motion of the court, in its own discretion. *Id.* Moreover, an appellate court may grant the parties any "relief on the law and facts to which [a] party is entitled or the proceeding otherwise requires" unless the relief would contravene the "province of the trier of fact." Tenn. R.App. P. 36(a).

Thus, the overall intent of the rules is to allow cases to be resolved on their merits. A

---

4. A court, however, may not extend the time for filing a notice of appeal as prescribed in Rule 4, an application for permission to appeal as prescribed in Rule 11, or a petition for review as prescribed in Rule 12. Tenn. R.App. P. 2.

court's construction and application of the rules should further that intent and should enhance, not impede, the search for justice. Tennessee appellate courts must give thoughtful consideration to the intent of the rules each time a procedural matter is resolved.

Notwithstanding this unquestionable policy behind the rules, parties who wish to receive a full, fair, and speedy resolution on the merits of the cases they appeal should endeavor to comply with the rules' requirements. An appellate court cannot review an empty record or address a poorly articulated issue. Thus, the rules anticipate that both the parties and the courts will act diligently and responsibly to assure that appeals are resolved on the merits.

Without a doubt, plaintiffs' counsel failed to follow the provisions of Rule 24. Rule 24 governs the contents of the record on appeal. It requires that "the appellant shall have prepared a transcript of such part of evidence or proceedings as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Tenn. R.App. P. 24(b). If a full transcript is not required, an appellant must "file with the clerk of the trial court and serve on the appellee a description of the parts of the transcript [the appellant] intends to include in the record, accompanied by a short and plain declaration of the issues...." Tenn. R.App. P. 24(b). The purpose of this provision is self-evident. Once notified that less than a complete transcript will be filed, appellee may consider whether the portions designated are sufficient to resolve the issues raised and, if not, may designate additional parts.[5] *Id.*

Plaintiffs' counsel, in this instance, relied upon a telephone call to the trial court clerk to designate portions of the record. Counsel served no notice on defendants. Moreover, the portion of the transcript, attached to the motion for new trial included in the technical record, was not a certified transcript as required by the rules. Tenn. R.App. P. 24(b).

When the allotted time period for filing the transcript had passed, defendants, understandably believing that plaintiffs had failed to pursue their appeal, moved for dismissal under Rule 26(b). At this point, plaintiffs attempted to rectify their failure by requesting permission to file the designation late. The Court of Appeals denied the request.

■ Under the unique circumstances of this case, in which all parties were aware of the basis for the appeal and in which a full transcript was not necessary to convey the issue, we believe the motion should have been granted. A suspension of the rules would have been completely consonant with the "just, speedy, and inexpensive determination" of this case on its merits. A late designation would have satisfied the purposes of Rule 24(b). Defendants would have had the opportunity to designate additional portions of the transcript. The appellate court would have had before it a full and fair record on which to resolve the issue. The volley of motions and responses that resulted from the denial would have been avoided. The hearing in the trial court may not have been necessary.

In addition to satisfying the overall objectives of the rules, our determination that this appeal should not have been dismissed finds support in specific provisions of the rules. Rule 26 grants the appellate court the discretion to rectify error rather than dismissing the appeal by providing:

> In lieu of granting the motion [to dismiss] or **at any time on its own motion,** the appellate court may order filing of the transcript or statement.

Tenn. R.App. P. 26(b)(emphasis added). Furthermore, Rule 24(e) allows the modification or supplementation of the record with any matter the trial court deems properly includable. Tenn. R.App. P. 24(e).

We do not condone the negligence of counsel. The provisions of Rule 24 regarding the designation, preparation, and certification of the transcript are clear and unambiguous. A

---

**5.** If appellant does not intend to include a transcript in the record, appellant must file notice of that intent with the trial court clerk and serve a copy on appellee within 15 days of the filing of

the notice of appeal. Tenn. R.App. P. 24(d). Appellee may then order that the transcript or portions thereof be transcribed, if desired. *Id.*

brief review of the rule prior to filing a notice of appeal will provide adequate instruction to careful counsel. Nonetheless, we hold that in this case, the dismissal of this appeal was inconsistent with the spirit and intent of the rules. *See Bradshaw v. Daniel,* 854 S.W.2d at 868–869; *Davis v. Sadler,* 612 S.W.2d at 161. Therefore, we reverse the Court of Appeals order denying plaintiffs' motion to supplement the record and dismissing the appeal.

 Having reversed the intermediate court's rulings, we must determine whether the record before us is sufficient to enable a disposition on the merits. Here, Rule 24(c) empowers the trial judge to correct and modify the record. The trial judge's determination is conclusive. Tenn. R.App. P. 24(c). A trial judge's order supplementing a record is sufficient to place the matter before the appellate court. *Wallace v. Wallace,* 733 S.W.2d at 106.[6] Absent extraordinary circumstances, an appellate court may not ignore matters that the trial judge has ordered included. *Bradshaw v. Daniel,* 854 S.W.2d at 868–69; *Wilson v. State,* 724 S.W.2d 766, 769 (Tenn.Crim.App.), *perm. to appeal denied,* (Tenn.1986); Tenn. R.App. P. 24(e). The trial judge certified and approved the portion of the transcript provided by plaintiffs and ordered the supplementation of the record.

 Defendants contend that the portion of the transcript supplemented by the trial judge is insufficient to convey the issue before us. We disagree. The transcript contains the trial judge's final instructions to the jury in full as well as the judge's colloquy with counsel and the jury. Defendants do not question the accuracy of the portion of the transcript certified by the trial judge. They have not attempted to designate additional portions or to supplement the record.

This record conveys a "fair, accurate and complete account of what transpired" with respect to the single issue raised in this appeal. Tenn. R.App. P. 24(b). Accordingly, rather than remand this case for consideration by the Court of Appeals, we will address the substantive issue. Tenn. R.App. P. 1, 2, & 36(a).

### III.

After more than twelve hours of deliberations, over the course of two days, the trial judge received a note from the foreperson. In the presence of counsel, trial judge read the note into the record:

> We seem to have reached an impasse. There are some who feel that we have gone over this and that it is futile to continue, that to—[I don't know what that word is]—that to quit, I can't take it anymore, I have got to get out of here. What shall we do? Regretfully, The Foreman.

Plaintiffs' counsel immediately moved for a mistrial. Defense counsel suggested that the judge bring the jury back before deciding to declare a mistrial. The judge agreed despite a previous similar indication from the jury.[7]

Once the jury was assembled, the judge asked each juror individually if further deliberation would be of value. The majority of jurors stated, without hesitation, that the jury was deadlocked; two gave uncertain responses; and one indicated that further deliberations would produce a verdict. The judge then delivered the following remarks:

> Well, I don't want any of you to surrender your convictions, beliefs or anything of that nature. Let me tell you some of my problems.
>
> My problems are that this jurisdiction, as well as all jurisdictions, have more than

---

**6.** In *Atkins v. Kirkpatrick,* 823 S.W.2d 547 (Tenn. App.), *perm. to appeal denied,* (Tenn.1991), the Court of Appeals held that although "the issue of omissions from or improper inclusions in the record should be first raised in the trial court, in the event the trial court errs in its ruling, this Court has inherent power to correct that ruling." 823 S.W.2d at 549. *Atkins* involved the inclusion of pretrial briefs and depositions never entered into evidence in the trial court. Because pretrial briefs and matters never entered into evidence in

the trial court are properly excluded, the ruling in *Atkins* is irrelevant to this case in which the transcript is unquestionably necessary to a consideration of the issue on appeal.

**7.** Apparently, the jury had reached an impasse during the late evening hours on the previous night. The judge, at that time, appropriately recharged the jury using Tennessee Pattern Jury Instruction 15.22.

we can all say grace over. I have tried almost 1400 cases last year, and I will do the same thing this year. How we were put in this sort of standing, I've had to put aside other work to try this case, or have one of my fellow judges to try this case, seven or eight days or what have you.

There's no better jury than what you all are. I have looked at you, each one of you, personally. I put out all of those special questionnaires personally. And some jurors have got to make a judgment call.

You know, I feel sorry for umpires. I don't play baseball, never did play baseball, and sometimes they have to, they have to call it a ball or a strike. I couldn't give criticism, but, I mean, I have to make a decision.

Now, let me just say this to you. Contrary to popular belief, we spend motion days, trial preparation, trial management conferences and all those things, and I come to work—I'm not begging for sympathy because I'm paid well for my work, but I come to work no later than 7:30, stay here until 5:00, don't work on the weekends. So these lawyers from both sides prepare like the dickens.

It seems to me that without surrendering your convictions or what have you, I would like to send you to a different place to have lunch, and I'm talking about, I'm thinking about Shoney's; and then you come back and just spend a little more time as to whether you can give an advisory. I'm talking about an advisory to me and to these lawyers. Some sort of answer is better than nothing.

Now, I know you spent, oh, a long, long time, and I feel badly asking you to do this, but I would like, I would like to just send you down there and let you order whatever you please. I don't think they serve caviar, and that's about the costliest

thing that I think you could ever get, but I will even pay for the tips myself. . . .

Now, I know that some of you have said it won't do any good. But some sort of an advisory might be helpful for me, for the lawyers in this case. And will you be willing to go to lunch? [8]

In response to a juror who asked what an "advisory" might be, the trial court said:

Well, you might have that, you have that jury instruction—I mean that jury return thing, you all might want to write me a letter on the back or something, or any sort of advisory, any sort of something other than just saying we can't, we can't make it, you see.

Some good jurors have got to try this case, and there's no better bunch than you.

A second juror inquired whether the jury was required to use the verdict form. The judge responded:

No. . . . You could write to your heart's content. And if we can't understand it, it's our tough luck. But some sort of an advisory other than my saying goodby to you.

The trial court then inquired whether the jury was willing to go to lunch and then give an advisory opinion. Each juror agreed. Once the jury left the court room, the trial judge explained to counsel: "Let them write out whatever they doggone want to, and then I will let you all interview these people, what have you, after that. They have heard all of this proof and so forth, and if there's anything I despise, it's a jury walking out and just giving up."

Plaintiffs' counsel again moved for a mistrial noting that one juror had been crying for two days and questioned the instructions to issue an "advisory." The judge explained:

I don't know what they are thinking, and I would like to know what they are thinking. I think that might be helpful to the two of you. . . .

---

**8.** The trial judge was not without justification in delivering this highly unusual charge. In an earlier case, he had given a similar charge and then, after giving the matter some consideration, he reversed himself and granted a new trial. The Court of Appeals, in that case, deemed the instructions noncoercive and reversed the trial court's grant of a new trial. The case was re-

manded so that the trial judge could rule as the thirteenth juror. This Court denied plaintiff's application for permission to appeal, concurring in result only, a month before the trial in this case. *See Michael Anthony Ladd v. Honda Motor Co., Ltd.*, No. 10A01–9309–CV–00399 (Tenn.App., Jackson, May 13, 1994).

Well, my friends, I'm just saying that in your negotiating, if we had one of our juries just for an advisory thing and you were stating the evidence, we had done that over a period of a day or two, that's what you'd get back.

Approximately one hour after they returned from lunch, the jury sent the judge the following note written on the back of the special verdict form:

> We, the jury believe that Dr. William E. Hardin has met the very minimum acceptable standards of care according to the law. However, we strongly believe that the minimum acceptable standard desperately needs to be raised. Therefore, we have no choice but to find Dr. W.E. Hardin not guilty of malpractice.

■ We conclude without hesitation that the judge's remarks in this case constitute a coercive jury instruction contrary to the rule of *Kersey v. State,* 525 S.W.2d 139 (Tenn. 1975). *See also Vanderbilt University v. Steely,* 566 S.W.2d 853 (Tenn.1978). In *Kersey v. State,* we concluded that "the interests of justice demand the rejection of the 'dynamite' charge" adopted in *Simmons v. State,* 198 Tenn. 587, 281 S.W.2d 487 (1955). *Kersey v. State,* 525 S.W.2d at 144.[9] We recognized that the right to trial by jury must not be impaired or encumbered, and that "[a]ny undue intrusion by the trial judge into this exclusive province of the jury, is an error of the first magnitude." *Id.* A trial judge has a legitimate interest in the administration of justice and must guide the jury's deliberation by instructing it on the governing rules of law. However, if a judge's effort to avoid a mistrial "reaches the point [that] a single

juror may be coerced into surrendering views conscientiously entertained, the jury's province is invaded and the requirement of unanimity is diluted." *Id.*

The *Kersey* Court then adopted the American Bar Association Guidelines from which Tennessee Pattern Jury Instruction 15.22 has been patterned.[10] The Court sanctioned repeating the charge if a deadlock developed, provided it had been included in the main charge. *Id.* at 145. The Court emphasized that "[s]trict adherence is expected and variations will not be permissible." *Id.; Vanderbilt University v. Steely,* 566 S.W.2d at 854; *Bass v. Barksdale,* 671 S.W.2d 476, 485–86 (Tenn.App.), *perm. to appeal denied,* (Tenn. 1984).

The trial court's charge did not admonish the jurors to "listen with a disposition to be convinced to each others arguments." *Simmons v. State,* 281 S.W.2d at 490. Nor did it enjoin a dissenting juror to evaluate his or her stand in light of the decisions of "so many men, equally honest, and equally intelligent with himself." *Allen v. United States,* 164 U.S. at 501, 17 S.Ct. at 157. Nonetheless, the instruction raised the specter of the time, effort, and money that a new trial would entail. An appeal to these irrelevant considerations is error. *Vanderbilt University v. Steely,* 566 S.W.2d at 854. Like the charge disapproved in *Steely,* the charge suggested that the jurors had a duty to agree. *Id.* "Nothing should be done or said to a juror which can in any manner be taken by that juror to indicate that he or she should abandon an honestly held conviction in order to reach a verdict so that time and money will be saved." *Bass v. Barksdale,* 671 S.W.2d at 486. As we noted in *Kersey:*

> It is your duty, as jurors, to consult with one another and to deliberate with a view of reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to re-examine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.
> T.P.I. Civil 15.22.

---

9. More widely known as the *Allen* charge, the Tennessee version of the "dynamite charge" urges the minority to consider the views of the majority "with a disposition to be convinced." *Simmons v. State,* 198 Tenn. 587, 281 S.W.2d 487 (1955). The charge originated first in *Commonwealth v. Tuey,* 62 Mass. 1 (1851) and came to national attention in *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

10. Tennessee Pattern Jury Instruction 15.22 provides:
The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous.

[A] mistrial from a hung jury is a safeguard to liberty. In many areas it is the sole means by which one or a few may stand out against an overwhelming contemporary public sentiment. Nothing should interfere with its exercise.

525 S.W.2d at 143 (quoting *Huffman v. United States,* 297 F.2d 754, 759 (5th Cir. 1962)(Brown, J., dissenting)).

It is clear that the charge given in this case did not comply with the rule set out in *Kersey.* However, an error in the jury charge is not necessarily grounds for reversal. *Vanderbilt University v. Steely,* 566 S.W.2d at 854. We must determine whether the charge affected the verdict. Given the nature of the charge, we are convinced that the charge was a material factor in producing the verdict.

In addition to running afoul of the mandates of *Kersey,* the charge given in this case impermissibly interfered with the jury's decision making process. It exhorted the jurors to consider the time and money that would be wasted by their failure to return a verdict. It suggested that their failure would further impose on busy court schedules.

The jury had twice returned to inform the judge that they were unable to reach a verdict. At least two jurors were finding the continued deliberations extremely stressful. One juror was weeping. The trial judge's remarks imploring the jury to decline to further burden an already overburdened docket could easily have caused jurors to feel subtly coerced.

An additional factor in our evaluation of the effect of the misguided charge is the judge's characterization of the desired verdict as an "advisory." The jurors and counsel were obviously confused as to the nature of an advisory verdict. Both inquired of the judge as to what he meant. His response, to counsel at least, indicated that he wanted something from the jury to guide counsel in future negotiations.

 While advisory verdicts are not unknown in Tennessee in equity matters, *see Smith County Education Association v.*

*Anderson,* 676 S.W.2d 328 (Tenn.1984), once a jury is impaneled to render a verdict, that determination is not an advisory opinion, but a final verdict. Further, the jury's findings of fact are binding upon the judge. *Id.* at 337–38. The judge's request for an "advisory" was, at the very least, confusing and inconsistent with Tennessee law. Although the judge polled the jury to inquire whether the finding was the "verdict" of each juror, the note, written on the back of the jury form, may represent nothing more than the jury's inept attempt to render the "advisory" requested by the trial court.

### Conclusion

Both the charge given in this case and the request that the jury return an advisory verdict are contradictory to well-established law. We cannot find that the jury's note represents an uncoerced, unanimous verdict. The Court of Appeals' order dismissing this appeal is reversed. The trial court's entry of judgment for the defendants is also reversed. The case is remanded for a new trial.

DROWOTA, ANDERSON and REID, JJ., concur.

BIRCH, C.J., not participating.