IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 18, 2005 Session

GILBERT WATERS, ET AL. v. WESLEY COKER, M.D.

Appeal from the Circuit Court for Davidson County
No. 01C-1443     Hamilton Gayden, Judge

No. M2004-01540-COA-R3-CV - Filed June 29, 2006

Plaintiff in medical malpractice action appeals jury verdict alleging that the "dynamite charge" which supplemented the original instruction after the jury was apparently deadlocked violated *Kersey v. State* and its progeny.  We agree and, because we find the instruction affected the result, we reverse.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Reversed and Remanded

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and WILLIAM B. CAIN, J., joined.

Robert L. Trentham, Taylor B. Mayes, Nashville, Tennessee, for the appellant, Wesley Coker, M.D.

Larry D. Ashworth, Richard H. Batson II, Nashville, Tennessee, for the appellees, Gilbert Waters and wife, Hixie Waters.

OPINION

Plaintiffs, Gilbert and Hixie Waters, filed suit against numerous defendants seeking to recover for injuries Mr. Waters sustained during surgery.  Initially, plaintiffs named the hospital, the anesthesiologist, the nurse anesthesiologist and the anesthesiology practice group involved in the surgery as defendants.  The surgeon, Dr. Coker, was named later.  During the course of the proceedings, all defendants except Dr. Coker were dismissed.

The case proceeded to trial against Dr. Coker, an orthopedic surgeon, for medical malpractice.  In May of 2000, according to plaintiffs, Dr. Coker performed surgery on Mr. Waters to repair a ruptured disk in his back, a lumbar laminectomy.  It was anticipated that after the surgery, Mr. Waters, a healthy 67 year-old, would be able to return to work.  Instead, Mr. Waters suffered brain damage.  Plaintiffs maintain that Mr. Waters' injuries were caused by medication given Mr. Waters by Dr. Coker during surgery (morphine and fentanyl) in addition to those administered by

the anesthesiologist.  Dr. Coker, on the other hand, denied fault and believed that Mr. Waters' injuries resulted from a series of strokes.

After a two week jury trial, a verdict was returned for Dr. Coker.  Dr. Coker appealed the trial court's refusal to award him discretionary costs.  Subsequently, the plaintiffs appealed, raising several grounds for reversal including the trial court's denial of their motion to amend the complaint to include informed consent, erroneous jury instructions, and error in giving a portion of the jury instructions outside the presence of counsel and the parties.  The ground raised by plaintiffs that we find dispositive, however, pertains to the supplemental charge which was given by the judge after the jury began deliberations and after it informed the judge it was deadlocked.

## I. THE SUPPLEMENTAL INSTRUCTION HEREIN

The record reflects that a day and a half after the jury had retired to deliberate, the jury foreman wrote a note to the trial judge advising the court that the jury was deadlocked.  The note given stated:  "The jury in the case of Gilbert Waters and Dr. Coker has reached an impasse with a vote of eleven to one."  The trial court accepted the note and, with the jury out of the courtroom, advised the parties and their counsel of the division, then read the note in open court.

After a discussion with counsel, both parties agreed for the court to give a "dynamite charge."  When the jury was brought back into the courtroom, the judge did not give the jury the instructions about deliberations and the duty of the jury that had been contained in the original instructions.  Instead, the court gave the jury the following instructions:

> Okay.  Ladies and gentlemen of the jury, the foreperson has informed me that you are presently hung up at eleven to one.  Now, what I'm going to do, since lunch has been ordered at a quarter to 12:00, is I'm going to ask you to continue to deliberate at least through lunch.  If all 12 of you are in the jury room eating lunch, you may talk about the case while your eating.

> Remember this, that don't give up your convictions merely for the purpose of reaching a verdict.  However, also remember that this was an expensive proceeding on both sides; very expensive, as you can imagine, bringing doctors from different parts of the country and having discovery depositions, the lawyer's time.  And, unfortunately, in Tennessee, we don't have a majority verdict or eight to three verdict as they do in some states, or nine to two.

> So none of us know who - how you're voting.  But I want the person to search their conscience.  If they feel like that they can equally come to a position with the other twelve, to do that.  Other eleven.  But, again, don't give up your convictions, but do remember that the case will have to be tried all over again, and that's something I hope you will consider.

So I'll excuse you to go eat lunch and come back. And as I said, nobody knows how that eleven-one is, and that's good. We'll leave it just like that.

Okay. You may be excused.

After the jury left the courtroom, the judge asked the attorneys if there were any objections to "my dynamite lunch charge." The record shows no objections were made. Later that day, the jury rendered its unanimous verdict for Dr. Coker.

## II. THE LAW OF "DYNAMITE" CHARGES

The term "dynamite charge" generally refers to a charge given the jury after deliberations have begun and when it appears the jury is deadlocked. The colloquialism arises from the intended effect to break the deadlock so that the jury reaches a unanimous decision. An examination of caselaw on the subject reveals that in Tennessee both the meaning and legal parameters of the "dynamite charge" have evolved.

In *Simmons v. State*, 281 S.W.2d 487 (Tenn. 1955), the Tennessee Supreme Court approved a supplemental charge that allowed jurors to be instructed to give heed to the opinions of their fellow jurors. The charge approved in *Simmons* was Tennessee's version of the dynamite charge approved by the United States Supreme Court in *Allen v. United States*, 164 U.S. 492, 501 (1896). The supplemental charge used with a deadlocked jury is sometimes referred to as the "Allen" or "dynamite charge."

In *Kersey v. State*, 525 S.W.2d 139 (Tenn. 1975), the Tennessee Supreme Court rejected the charge that had been approved in *Simmons* and provided clear guidelines regarding supplemental charges to deadlocked juries. In *Kersey*, the jury in a criminal trial reported to the court that they were unable to reach a unanimous verdict. *Id*. at 140. Upon inquiry by the judge, the jury foreman reported that the jury was deadlocked eleven to one. *Id*. Thereafter, the judge gave the jury what was then called a "dynamite" or "Allen" charge which, in effect, advised dissenting jurors that they should give heed to the majority position.[1] *Id*. It was hoped that the "dynamite" charge "would blast the jury into a unanimous verdict." *Id*.

In *Kersey*, the Supreme Court ruled that the charge previously approved in *Simmons* violated the right to trial by jury. *Id*. at 144. The court then proceeded to provide guidance on several aspects of charging the jury after deliberations had begun in an effort to resolve a deadlocked jury. First, the trial courts were admonished in *Kersey* not to inquire about how a jury may be divided.

Until the jury shall have reached a verdict, no one - - not even the trial judge - - has any right, reason or power to question the specifics of its deliberative efforts.

_____

[1]This was the same charge approved in *Simmons*. *Kersey*, 525 S.W.2d at 140 n.2.

*Id*. at 141.  The Court went on to instruct trial courts to admonish juries not to disclose their division since the "only permissive inquiry" is as to progress and whether it believes further deliberations might be helpful.  *Id*.

The Court then discussed the history of the "dynamite" or "Allen" charge.  The Court noted that this issue "has tantalized the criminal defense bar, tortured the trial bench, and tormented the appellate courts throughout the nation."  *Id*. at 142.  The Court found as follows:

> The right of trial by jury may not be impaired or encumbered with conditions which, in their practical operation, may embarrass or violate the free and full enjoyment of the right.

> In our view the *Allen* charge and the *Allen-Simmons* charge operate to embarrass, impair and violate the constitutional right of trial by jury.  Any undue intrusion by the trial judge into this exclusive province of the jury, is an error of the first magnitude.  We recognize that the trial judge has a legitimate concern in the administration of justice and that he labors under a duty to lend guidance to the jury through instructions as to the governing principles of the law.  However, when the effort to secure a verdict reaches the point that a single juror may be coerced into surrendering views conscientiously entertained, the jury's province is invaded and the requirement of unanimity is diluted.  We view these charges as being tantamount to a judicially mandated majority verdict which is impermissible under Tennessee law.

> Moreover, there is an inherent inconsistency in these charges in that the dissenters are urged to reconsider their verdict and simultaneously are reminded to make their decisions based upon their own convictions which they are cautioned not to sacrifice.  They ask the dissenters to consider shifting their opinions, because the majority is of a different persuasion.  We find no merit to any suggestion that might necessarily makes right.  We take note of the classic lines:

> > NOR IS THE PEOPLE'S JUDGMENT ALWAYS TRUE.  THE MOST MAY ERR AS GROSSLY AS THE FEW.

> We conclude that the interests of justice demand the rejection of the "dynamite" charge.  Under the statutory and inherent supervisory power of this Court, we direct that trial courts in Tennessee, when faced with deadlocked juries, comply with the ABA Standards Relating to Trial by Jury, Sec. 5.4 . . . .

> The instruction contemplated in Sec. 5.4(a) may be given as a part of the main charge and should be given in the following form:

The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

If given as a part of the main charge, it may be repeated should a deadlock develop.

Judicial economy and uniformity demand these results. Strict adherence is expected and variations will not be permissible.

We hold that the charge given in this case was prejudicial.

*Id.* at 144-45 (internal citations omitted). To summarize, the Supreme Court in *Kersey,* using the strongest possible language, gave the following guidance when providing supplemental instructions to jurors:

1) Jurors should be advised not to disclose how the jury may be divided;

2) The only permissive inquiry by the court is about progress and whether further deliberations may be helpful;

3) If giving supplemental instructions, the standard charge provided in *Kersey* must be given; and

4) The *Kersey* supplemental charge may only be given if it was included in the main charge.

In particular, the *Kersey* court disapproved any language that might coerce a juror into surrendering to the majority, against his or her conscientiously-held views, for the sake of unanimity.

-5-

While the court in *Kersey* said it "rejected" the dynamite charge, the term nevertheless continues to be used informally to describe a supplemental charge given when a jury is deadlocked. Given subsequent history, it appears more accurate to say the dynamite charge given by the trial court in *Kersey* was rejected and guidance was given as to the parameters of an acceptable dynamite charge for the future, also known as the "*Kersey* charge." While the term "dynamite charge" is not favored, it remains in common usage.

In 1978, the Tennessee Supreme Court applied the principles of *Kersey* to a civil case in *Vanderbilt Univ. v. Steely*, 566 S.W.2d 853 (Tenn. 1978). Mr. Steely sued Vanderbilt for injuries he sustained when he fell down a flight of stairs at the university. *Id*. at 853. The issues at trial were "hotly contested," and the jury reported it was unable to reach a verdict after it had deliberated for some time. *Id*. The judge gave a supplemental charge which varied from the charge provided in *Kersey*. The charge in *Steely* reminded the jury of the time and expense consumed at the trial and instructed that each juror should consider the opinion of fellow jurors and be influenced to the extent the juror considers proper. *Id*. at 855-56.

The Supreme Court in *Steely* found this charge violated the guidelines laid down in *Kersey*. First, the supplemental charge was not the one mandated in *Kersey* and made reference to additional considerations that should not play a role. *Id*. at 854. Second, the supplemental charge given had not been included in the main charge. *Id*. Quoting *Kersey*, the Court found this to be "an error of the first magnitude" and reinforced that "strict adherence to the dictate of *Kersey* is expected, and variations are not permitted." *Id*.

For a charge to be reversible error, however, the erroneous charge must be found to have affected the results of the trial. *Id*. The Court in *Steely* phrased the requirement thusly:

> An error in the charge of the judge to the jury is not grounds for reversal unless it affirmatively appears that the error has affected the results of the trial. T.C.A. § 27-117. Upon a considered review of the entire record of the cause, we are of the opinion that the supplemental charge was a material factor in persuading the jury to return a verdict, and that the variation between that charge and the *Kersey* charge was a material factor in its having that effect. In particular, the charge given informed the jury that, should they fail to agree, a new trial would be necessary, and emphasized the waste of time, money, and effort that this would entail. It contains language that could be interpreted as implying that the jurors had a "duty" to agree. Finally, the entire charge was improperly emphasized by being given for the first time only after the jury had been deadlocked for several hours. We believe that these departures from the *Kersey* standard, when taken collectively, worked to the material prejudice of the petitioner.

*Id*. at 854.

This court was presented with a challenge to a supplemental instruction in *Bass v. Barksdale*, 671 S.W.2d 476 (Tenn. Ct. App. 1984). In *Bass*, the plaintiff brought a medical malpractice action claiming that due to negligent administration of ethambutol, an anti-tuberculosis drug, she lost her sight. *Id*. at 478. At the close of the proof and before lunch, the jury was charged.

Later in the afternoon, the judge called the jury back. *Id*. at 483. The judge asked about their progress and was informed by the foreman that one juror was preventing a unanimous verdict. *Id*. The judge then gave the jury a portion of the *Kersey* charge he had given in the main charge but also went beyond *Kersey* when he reminded the jury that if the verdict was not unanimous then the case must be retried and referred to a retrial as a waste of the taxpayers' money. *Id*. at 484. The opinion did not note that any objections were made to the supplemental charge.

The court in *Bass* found that the judge failed to admonish the jury not to divulge its division, and failed to give the supplemental charge laid out in *Kersey*. *Id*. at 485-86.

> While the Trial Judge committed "error of the first magnitude," *Kersey*, 525 S.W.2d at 144, this alone is not sufficient to reverse. It must affirmatively appear that the error in the jury charge has affected the results of the trial. Tenn. R. App. P. 36(b); *Vanderbilt University v. Steely*, 566 S.W.2d at 854.

> We are of the opinion after a review of the record that the failure of the Trial Judge to give the entire *Kersey* charge in the main charge and then to emphasize that partial *Kersey* charge by giving it as a supplemental charge to what was perceived to be a "deadlocked" jury was a material factor, particularly when taken with the fact that the Trial Judge informed the jury "all of the time we've spent on the trial up until now has gone down the drain . . . we'd have to try the case all over again. . . . sometimes it seems like we're just wasting the taxpayers' money to come back in and spend another two weeks on a case that we've tried," that resulted in prejudice to the defendants.

> Nothing should be done or said to a juror which can in any manner be taken by that juror to indicate that he or she should abandon an honestly held conviction in order to reach a verdict so that time and money will be saved.

*Id*. at 486.

The Supreme Court's position in *Kersey* and *Steely* was reaffirmed in *Johnson v. Hardin*, 926 S.W.2d 236 (Tenn. 1996), wherein the Court reversed a jury verdict based on failure to comply with *Kersey*. *Johnson*, 926 S.W.2d at 242-43. In *Johnson*, the Court reiterated that a mistrial from a hung jury can be a safeguard to liberty. *Id*. at 242.

In many areas [a hung jury] is the sole means by which one or a few may stand out against an overwhelming contemporary public sentiment. Nothing should interfere with its exercise.

*Johnson*, 926 S.W.2d at 243 (quoting *Kersey*, 525 S.W.2d at 143). The Court in *Johnson* cited *Bass* favorably for the principle that reference to resources expended for a trial cannot be used to encourage unanimity in a verdict. *Id.*

## III. ANALYSIS

Based upon the precedent set out above, we must conclude that the supplemental instructions were error. They clearly differed from the instructions specified in *Kersey* and failed to follow the format specified in *Kersey* and *Steely*. In addition, the trial court twice made reference to the time and expense incurred for the trial, although our courts have clearly found "appeal to these irrelevant considerations is error." *Johnson*, 926 S.W.2d at 242; *Steely*, 566 S.W.2d at 855. An additional damaging aspect of the instruction was the trial court's reference to the requirement of a unanimous verdict which could be perceived as critical of that requirement: "Unfortunately, in Tennessee, we do not have a majority verdict." A reasonable juror could have concluded that the trial judge was intimating that a lone holdout juror should not prevent a verdict.

Further, the court directly addressed the holdout juror, although it did not identify him or her, and specifically urged that he or she attempt to come to the same position as the others and to remember that retrial was the consequence if he or she did not. This language could have coerced the single juror into surrendering conscientiously-held views, thereby invading the province of the jury and diluting the requirement of unanimity. *State v. Torres*, 82 S.W.3d 236, 257-58 (Tenn. 2002). Harkening back to *Kersey*, any instruction that is "tantamount to a judicially mandated majority verdict" is not allowed under Tennessee law. *Kersey*, 525 S.W.2d at 145. The Supreme Court has repeatedly advised that "strict adherence to *Kersey* is expected and failure to do so is an error of the first magnitude." We view the charge given herein as tantamount to a judicially mandated majority verdict.

Since we have found that the supplemental instructions given herein violated the guidelines set by the Supreme Court in *Kersey* and *Steely*, we must also consider whether it affirmatively appears that the error in the jury charge has affected the results of the trial. Tenn. R. App. P. 36(b); *Steely*, 566 S.W.2d at 854; *Bass*, 671 S.W.2d at 486. The question is whether the charge violating *Kersey* was a material factor in persuading the jury to return a verdict. *Steely*, 566 S.W.2d at 855; *State v. Bishop*, No. 02C01-9508-CC-00243, 1997 WL 122246 at *8 (Tenn. Crim. App. Mar. 19, 1997). That determination is fact-specific and must be made in view of the context and "under all the circumstances." *Torres*, 82 S.W.3d at 258 (quoting *Lowenfield v. Phelps*, 484 U.S. 231, 237 (1988)).

Considering the position and influence of a presiding trial judge, there is reason to believe that his strong request to the jury was calculated to and did produce a verdict from a jury which was deadlocked. It was therefore prejudicial and not harmless.

*Bervoets v. Hardy Ralls Pontiac-Olds, Inc.*, No. 86-169-II, 1986 WL 13502 at *12 (Tenn. Ct. App. Dec. 3, 1986).

Based upon the record before us, we believe the erroneous instruction was a material factor leading to a verdict. The jury had deliberated for one and one-half days; one juror disagreed with the others; shortly after the trial court gave the supplemental instruction, a unanimous verdict was reached. Based on the language of and circumstances surrounding the charge, it appears to us that the charge affected the result.

We note that the court asked for objections to this charge and none were made.[2] The request for objections, however, was made after the charge was given and after the jury had resumed deliberations. In this specific factual circumstance we do not find a waiver. First, any objection would have been pointless since it would be nearly impossible to "unring the bell" after the court had provided its thoughts on the unanimous verdict requirement. Second, the jury had already begun deliberations based on the erroneous charge before the court asked if there were objections. Additionally, where fundamental concepts underlying trial by jury are at stake, any waiver should appear specifically and definitively in the record.

Judgment of the trial court is reversed, and the case is remanded for a new trial. Costs of this appeal are assessed against the appellant, Wesley Coker, M.D., for which execution may issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE

---

[2]In *Bass*, the trial court provided the opportunity for questions or objections after the erroneous charge, and none were made. *Bass*, 671 S.W.2d at 484. Apparently, the appellate court in *Bass* did not view failure to object as preventing reversal because of the erroneous charge.