FILED

06/29/2017

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
February 7, 2017 Session

## STATE OF TENNESSEE v. LAVELLE MOORE

**Appeal from the Criminal Court for Shelby County**
No. 13-06261     James M. Lammey, Judge

_____

### No. W2016-00094-CCA-R3-CD
_____

A Shelby County jury convicted the defendant, Lavelle Moore, of six counts of theft of property over $500 but less than $1000. The trial court merged the convictions into two counts and imposed an effective sentence of twelve years. On appeal, the defendant contends the evidence is insufficient to support his convictions; the trial court abused its discretion by ruling the defendant could be impeached with his prior theft conviction; the theft convictions violate double jeopardy; the trial court erred by ordering the defendant, during deliberations, to stand before the jury and display his eyes; the trial court abused its discretion by telling the jury to keep working after it reached an impasse; and the trial court abused its discretion when imposing consecutive sentences. After a thorough review of the record, we conclude the evidence was sufficient; the trial court properly allowed the defendant to be impeached with his prior theft conviction; and the convictions did not violate principles of double jeopardy. However, we also conclude the trial court erred when allowing the jury to view the defendant's eyes in close proximity for the first time after the case had been submitted to the jury. This error was not harmless. Accordingly, we reverse the judgments of the trial court and remand for a new trial. Because we have remanded this matter for a new trial, the defendant's final issues concerning the trial court directing the jury to continue deliberations and sentencing are pretermitted.

**Tenn. R. App. R. 3 Appeal as of Right; Judgments of the Criminal Court Reversed
and Remanded**

J. ROSS DYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and CAMILLE R. MCMULLEN, J., joined.

Lance R. Chism, Memphis, Tennessee, for the appellant, Lavelle Moore.

Herbert H. Slatery III, Attorney General and Reporter; Zachary T. Hinkle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Chris Lareau, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## *Facts and Procedural History*

The record reflects a Shelby County grand jury indicted the defendant on December 19, 2013, for theft of property over $500 – conduct involving merchandise. His jury trial went forward May 12, 2015, and the parties presented the following evidence:

Around 10:00 a.m. on March 10, 2012, the defendant entered a Best Buy store in Shelby County, Tennessee. David Tolbert, a Best Buy employee, witnessed the defendant walking around the store, holding a bag, and wearing black pants, a black shirt, and a black hat. Video surveillance from the store shows the defendant walking through the store holding a blue bag with an item in it. As the defendant exited the store, the security alarm sounded. Store employees noted the defendant was carrying a bag containing a laptop with a security device still attached. They asked the defendant to produce a receipt for the laptop, and he refused.

Around 7:44 p.m. the same day, the defendant returned to Best Buy with another man. The defendant wore the same black pants, black shirt, and back hat. Justin Jaynes, a Best Buy employee, noticed the man with the defendant carrying a bag containing a Toshiba laptop, and asked Patrick Hitt, a Best Buy employee working at the asset protection desk, to check the man's receipt before allowing him to leave the store. When the men exited the store, Mr. Hitt complied and asked to see the receipt and the contents of the bag. Matthew Salamon, another Best Buy employee, approached and witnessed the defendant hand a receipt to Mr. Hitt, while his accomplice walked into the parking lot with the bag, sounding the security alarm. Mr. Hitt told the defendant he needed to see the contents of the bag, and the defendant grabbed the receipt from Mr. Hitt's hand, said "f**k you," and walked into the parking lot.

Once in the parking lot, the defendant and his accomplice got into the same car, and the defendant drove away. Mr. Salamon recorded the license plate number on the vehicle and contacted Detective Raual Gonzales with the Shelby County Sheriff's Department. Detective Gonzales researched the tag numbers and determined the vehicle was registered to the defendant. Mr. Salamon performed an inventory check after the

store closed and noted two laptops were missing – a Samsung with an $873 value, and a Toshiba with a $750 value.

A couple weeks after the theft, Detective Gonzales returned to Best Buy with a photo lineup. Mr. Tolbert could not identify the defendant, but Mr. Salamon did. Mr. Salamon testified he was able to identify the defendant in the lineup due to his eyes because "[h]is eyes are very dark, and they just – they stand out to me." Both Mr. Hitt and Mr. Tolbert also acknowledged remembering the defendant due to his eyes. According to Mr. Tolbert, "there was something strange about his eyes." According to Mr. Hitt, he remembered the shape of the defendant's eyes and the way "he looked at me directly in the eyes when he said, 'F**k you,' to me, and you know that was something that I didn't really forget."

The State called Mr. Tolbert, Detective Gonzales, Mr. Jaynes, Mr. Hitt, and Mr. Salamon to testify at trial. In addition, the State played store surveillance video from the day in question, and Mr. Salamon identified the defendant in footage from both the morning and evening thefts. The defendant did not present proof.

After closing arguments and being charged, the jury began to deliberate at 10:52 a.m. on May 14, 2015, and subsequently broke for lunch from 12:39 p.m. to 1:45 p.m. At 2:11 p.m., the jury sent a note to the trial court indicating they were deadlocked. The trial court told the jury to continue to deliberate. Deliberations resumed, and at 2:29 p.m., the trial court informed the parties that the jury "wants to take a look – close up look at the defendant's eyes." The defendant objected, stating he had been in the court room for two days, giving the jury ample opportunities to observe his eyes. The trial judge disagreed, noting the defendant raised the defendant's eyes on cross-examination and relied heavily on the identification of the defendant only by his eyes in closing. The trial court found it would "only be fair that [the jury] should be able to get a better look at his eyes," particularly due to the good lighting in Best Buy and the poor lighting in the courtroom. The trial court then directed the defendant to stand close to the jury, in the light, and walk in multiple directions. The jury resumed deliberations at 2:42 p.m. and returned a verdict at 3:20 p.m., finding the defendant guilty of six counts of theft of property over $500 but less than $1000.

The defendant's sentencing hearing went forward September 23, 2015. The trial court noted counts one through three and counts four through six were alternative factual scenarios for the same theft, so counts two and three merged into count one and counts five and six merged into count four. When considering the applicable enhancement factors, the trial court found the defendant had a previous history of criminal convictions and behavior in addition to that necessary to establish the appropriate range. Moreover, the defendant was on probation at the time he committed the crimes at issue. The trial

court, therefore, sentenced the defendant as a Range 3, persistent offender, to two sentences of six years to be served at forty-five percent. After finding the defendant to be a professional criminal who knowingly devoted his life to criminal acts as a major source of livelihood, the trial court ordered the defendant to serve these sentences consecutively, for a total effective sentence of twelve years.

The defendant filed a timely motion for new trial, arguing, in part: the trial court erred when allowing the defendant to be impeached with a prior felony conviction for theft over $1000; the trial court erred when responding to a jury question; the trial court erred when allowing the jury to observe the defendant's eyes after the close of proof and while in the process of deliberating; and the trial court erred when sentencing the defendant. The trial court denied the motion on November 23, 2015. The defendant filed a motion for permission to file a late notice of appeal in this Court on January 14, 2016. On January 20, 2016, this Court, pursuant to Tennessee Rule of Appellate Procedure 4(a), found that the interest of justice required the waiver of the timely filing of the defendant's notice of appeal, so the defendant proceeding with filing his late notice on January 27, 2016.

*Analysis*

On appeal, the defendant argues: the evidence was insufficient to support his convictions; the trial court abused its discretion by ruling he could be impeached with his prior theft conviction; his convictions violate the double jeopardy clauses; the trial court erred by not giving the expanded identity jury instruction; the trial court erred by ordering the defendant to display his eyes to the jury during deliberations; the trial court abused its discretion by telling the jury to keep working when it was clear the jury was unable to reach a verdict; and the trial court abused its discretion when ordering consecutive sentencing.

## I.    Sufficiency of Evidence

When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans,* 838 S.W.2d 185, 190-92 (Tenn. 1992); *State v. Anderson,* 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *See State v. Pappas,* 754

S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace,* 493 S.W.2d 474, 476 (Tenn. 1973). Our Supreme Court has stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State,* 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State,* 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle,* 639 S.W.2d 913, 914 (Tenn. 1982).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. *State v. Matthews,* 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing *State v. Brown,* 551 S.W.2d 329, 331 (Tenn. 1977); *Farmer v. State,* 343 S.W.2d 895, 897 (Tenn. 1961)). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes,* 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson,* 279 S.W.3d 265, 275 (Tenn. 2009)). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. *State v. Campbell,* 245 S.W.3d 331, 335 (Tenn. 2008) (citing *Byrge v. State,* 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. *Dorantes,* 331 S.W.3d at 379 (citing *State v. Rice,* 184 S.W.3d 646, 662 (Tenn. 2006)). This Court, when considering the sufficiency of the evidence, shall not reweigh the evidence or substitute its inferences for those drawn by the trier of fact. *Id.*

Under Tennessee law, a person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent. Tenn. Code Ann. § 39-14-103(a). For the purposes of Tennessee Code Annotated section 39-14-103, a person commits theft of

merchandise if, with intent to deprive the merchant of the stated price of the merchandise, the person knowingly conceals, removes, takes possession of, or causes the removal of the merchandise. Tenn. Code Ann. § 39-14-103(a). "A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." Tenn. Code Ann. § 39-11-302(b).

At trial, the State had to prove the defendant intended to deprive Best Buy of property, and the defendant knowingly concealed, removed, took possession of, or caused the removal of merchandise. Tenn. Code Ann. § 39-14-146. To sustain the defendant's Class E felony conviction, the State also had to prove the value of the property was over $500. Tenn. Code Ann. § 39-14-105(2). Tennessee Code Annotated section 39-11-106 defines "value" as "(i) [t]he fair market value of the property or service at the time and place of the offense; or (ii) [i]f the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the offense[.]" Tenn. Code Ann. § 39-11-106(a)(36)(A). The fair market value of property is a question of fact for the trier of fact. *See State v. Hamm,* 611 S.W.2d 826, 828-29 (Tenn.1981); *see also, State v. Leverette,* No. M2009-01286-CCA-R3-CD, 2010 WL 2943290, at *2 (Tenn. Crim. App. Jul. 26, 2010).

In the present matter, the defendant argues the evidence is insufficient to support his convictions for theft of property over $500. With respect to the morning incident, the defendant asserts the State did not adequately identify the defendant, failed to present proof he concealed the laptop into his bag, and failed to prove the value of the laptop. However, despite being unable to identify the perpetrator in the lineup presented two weeks after the incident, Mr. Tolbert was able to identify the defendant at trial. Mr. Salamon, who witnessed the defendant in the store during the evening incident, positively identified him during the morning incident based on surveillance video footage. Mr. Tolbert testified that he saw the defendant in the store holding a bag the morning of May 10, 2012, and Mr. Salamon confirmed this when explaining the surveillance video to the jury. Critical to the eyewitnesses' identification of the defendant was a detailed description of his eyes. While this proof is required to be considered when reviewing the sufficiency of the evidence, it also magnifies the harm of the trial court's error which requires reversal of the convictions and remand for a new trial.

The security alarm sounded when the defendant exited the store the morning of May 10, 2012, and Mr. Tolbert noted the defendant had a bag containing a laptop bound with a security device. The inventory check performed at the end of the day revealed two missing laptop computers, one Samsung and one Toshiba. Mr. Salamon saw the Toshiba laptop in the bag carried by the defendant's accomplice during the theft that occurred later the evening of May 10, 2012, and reasoned the missing Samsung laptop was the one

taken by the defendant that morning. Mr. Salamon testified the Samsung laptop had a value of "eight seventy-three."

Considering this testimony in the light most favorable to the State, there was ample evidence at trial to support the defendant's conviction for theft of property over $500 as a result of the morning incident. By challenging the reliability of the identification of the defendant by Mr. Tolbert and Mr. Salamon, the defendant questions the credibility of their testimony. The trier of fact is in a better position than this Court to assess the credibility of witnesses, determine the weight of the evidence and the value afforded it, and resolve any conflicts in the evidence. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). We will not disturb this credibility finding on appeal.

Moreover, the defendant's challenge of Mr. Salamon's testimony regarding the value of the stolen Samsung computer is without merit. The fair market value of property is a question of fact for the jury that may be demonstrated through testimony as to the listed price of the stolen merchandise. *See State v. Leverette*, No. M2009-01286-CCA-R3-CD, 2010 WL 2943290, at *2 (Tenn. Crim. App. July 26, 2010) (finding sufficient evidence for a rational trier of fact to find the fair market value of the stolen property to be over $500 where store employees testified eight tires were stolen, and those tires typically sold in the store for $79 each). Through its verdict, the jury found the stolen Samsung computer to have a fair market value of $873. Juries are able to use their collective knowledge, experience, and common sense when reaching factual determinations, and a rational jury could find that when testifying the stolen Samsung laptop had a value of "eight seventy-three," Mr. Salamon meant $873. *See State v. Keen*, 31 S.W.3d 196, 212 (Tenn. 2000) (stating "[a] jury's ability to use its collective knowledge, experience, and common sense to assist in reaching a determination in these weighty and complex matters is the very strength of the jury system"). The defendant is not entitled to relief on this issue.

With respect to the evening incident, the defendant again contends the State failed to establish the defendant's identity as the perpetrator of the offense. The defendant argues Mr. Salamon's identification occurred over two weeks after the theft, making it suspect. Likewise, when the State asked Mr. Hitt at trial whether he saw the suspect in the courtroom, Mr. Hitt expressed hesitation by stating, "I believe so." Again, the defendant challenges the credibility of the testimony rendered by Mr. Salamon and Mr. Hitt, and this Court does not make credibility determinations. The defendant is not entitled to relief on this issue.

The defendant further contends the evidence was insufficient to establish he committed theft of property the evening of March 10, 2012. According to the defendant, the man with him carried the bag containing the Toshiba laptop; the defendant himself

did not physically take anything out of the store that night. In addition, the defendant contends the State failed to prove the value of the laptop. Our review of the record, however, reveals the defendant exited the store with the man carrying the laptop, attempted to present a receipt for the item carried by his companion, refused the store employee's request to inspect the contents of the bag, and drove away with the other man in a car registered in the defendant's name. Mr. Salamon saw the Toshiba laptop in the bag carried by the defendant's accomplice and, with respect to the value of the laptop, testified "I believe it was seven fifty."

When viewing this evidence in the light most favorable to the State, the evidence was sufficient to show the defendant intended to deprive Best Buy of the laptop and knowingly caused it to be removed from the store the evening of May 10, 2012. With respect to the value of the property, again, the evidence was sufficient for a rational jury to conclude the stolen Toshiba laptop had a fair market value of $750. The defendant is not entitled to relief on this issue.

## II.   Impeachment with Prior Conviction

The defendant next contends the trial court abused its discretion by ruling the defendant could be impeached with his prior conviction for theft of property over $1000 in the event he testified at trial. He argues the prior offense was identical or substantially similar to the offense for which he was tried, so the probative value did not outweigh the prejudicial effect on the substantive issues. The State argues the trial court did not err when it determined the defendant's prior conviction would be admissible. Discerning no error, we affirm the decision of the trial court.

This Court reviews the trial court's ruling on the admissibility of a prior conviction for impeachment purposes under an abuse of discretion standard. *State v. Russell*, 382 S.W.3d 312, 317 (Tenn. 2012). "A trial court abuses its discretion when it applies an incorrect legal standard or reaches a decision that is against logic or reasoning that causes an injustice to the party complaining." *Id.*

Tennessee Rule of Evidence 609 allows impeachment with a prior conviction if these conditions are satisfied:

(a) [T]he conviction is for a crime punishable by death or imprisonment in excess of one year, or the conviction is for a misdemeanor which involved dishonesty or false statement; (b) less than ten years has elapsed between the date the accused was released from confinement and the commencement of the subject prosecution; (c) the State gives reasonable

pretrial written notice of the particular conviction or convictions it intends to use as impeachment; and (d) the trial court concludes that the probative value of the prior conviction on the issue of credibility outweighs its unfair prejudicial effect on the substantive issues.

*State v. Mixon*, 983 S.W.2d 661, 674 (Tenn. 1999).

When determining whether the probative value of the prior conviction outweighs the danger of unfair prejudice, the trial court should "analyze the relevance of the impeaching conviction as to the issue of credibility." *Id.* If the trial court finds the prior conviction is relevant, then it should state the reason for its finding on the record, and "'assess the similarity between the crime on trial and the crime underlying the impeaching conviction.'" *Mixon*, 983 S.W.2d at 674 (quoting Cohen, Sheppeard Paine, *Tennessee Law of Evidence* § 609.9 at 376 (3d ed. 1995)). The potential for prejudice as to the substantive issues increases greatly when the impeaching conviction is the same as the crime for which the accused is being tried. *Mixon*, 983 S.W.2d at 674. However, "[t]he mere fact a prior conviction of the accused is identical or similar in nature to the offense for which the accused is being tried does not, as a matter of law, bar the use of the conviction to impeach him as a witness." *State v. Baker*, 956 S.W.2d 8, 15 (Tenn. Crim. App. 1997). Convictions for theft and burglary are crimes of dishonesty and, as such, are "highly probative of credibility." *Id.* Accordingly, this Court has affirmed the use of prior convictions for impeachment purposes even when the defendant is being tried for the same or similar offense. *See, e.g., State v. Mickey Edwards*, No. W2014-00987-CCA-R3-CD, 2015 WL 5169110, at *16-17 (Tenn. Crim. App. Aug. 27, 2015) (theft convictions admissible to impeach defendant in prosecution for theft); *Baker*, 956 S.W.2d at 15 (prior convictions for burglary admissible to impeach defendant in prosecution for aggravated burglary).

The defendant is only entitled to relief if the error "more probably than not affected the judgment to the defendant's prejudice." *State v. Taylor,* 993 S.W.2d 33, 35 (Tenn. 1999). When determining "whether the erroneous impeachment would have an impact on the result of the trial" this Court considers whether the trial court's ruling prejudiced the defendant by examining the defense theory presented through the arguments of counsel, the presentation of evidence during the defendant's case-in-chief, and the defendant's cross-examination of the State's witnesses. *State v. Lankford,* 298 S.W.3d 176, 182-83 (Tenn. Crim. App. 2008). In cases where the defendant elects not to testify, the defendant is not required to make an offer of proof regarding what his testimony would have been. *State v. Galmore,* 994 S.W.2d 120, 125 (Tenn.1999). However, our Supreme Court has also recognized that, "[d]epending on the facts and circumstances of a case, an offer of proof may be the only way to demonstrate prejudice." *Id.*

Here, after filing the requisite written notice, the State asked to impeach the defendant with a conviction for theft of property over $1000 dated January 24, 2010.[1] The defendant objected, arguing the prejudicial effect of impeachment with the same crime would outweigh its probative value. The trial court disagreed and granted the request. In support of its ruling, the trial court noted on the record that the defendant's prior conviction was both a felony and a crime of dishonesty. The trial court referenced case law allowing impeachment with a prior similar crime when that crime is also one of dishonesty, acknowledging, "[i]f [the prior conviction] didn't have any value as far as dishonesty – if it was a drug case, you would have a good argument."

The trial court did not abuse its discretion when ruling that the defendant could be impeached with his prior conviction if he chose to testify. While the conviction sought to be used by the State was virtually identical to the crime for which the defendant was being tried, the trial court stated, on the record, it would allow the use of the prior conviction because it was a felony and highly probative of the defendant's credibility. Again, a conviction for theft is highly probative of a defendant's credibility. *See Baker*, 956 S.W.2d at 15.

Additionally, the defendant failed to show how the trial court's ruling prejudiced his case. The defendant did not testify or present any other evidence at trial, and the closing arguments presented by the parties are not part of the record. Based on the defendant's cross-examination of the State's witnesses and the arguments of counsel during trial, the defendant theorized he had not been properly identified as the perpetrator, and the State failed to present proof the defendant himself put the laptops in the shopping bag and walked out of the store without paying for them. The defendant did not present a defense theory that required his testimony and did not make an offer of proof as to his proposed testimony. *See Taylor*, 993 S.W.2d at 35; *State v. Deangelo Jackson*, No. W2014-01981-CCA-R3-CD, 2015 WL 7526949, *8 (Tenn. Crim. App. Nov. 24, 2015). Even if the trial court had abused its discretion in allowing the State to impeach the defendant with his prior conviction, the defendant has failed to prove he was prejudiced by that ruling. The defendant is not entitled to relief on this issue.

## III. Double Jeopardy

The defendant next argues his convictions for theft of property over $500 violate the double jeopardy clauses of both the Federal and State constitutions because they arise

---

[1] The State also asked to impeach the defendant with four additional felony convictions occurring between 1992 and 2000 but subsequently withdrew the request, acknowledging the convictions were too old.

from a single criminal episode. The defendant acknowledges he failed to raise this claim in his motion for new trial but submits he is entitled to plain error review. We disagree and affirm the judgments of the trial court.

The defendant raises his double jeopardy argument for the first time on appeal, so it has been waived. *State v. Hatcher*, 310 S.W.3d 788, 808 (Tenn. 2010). Moreover, the defendant is not entitled to "plain error" review. In discussing "plain error" review, the Tennessee Supreme Court has held:

> This Court will not grant relief under plain error review unless five criteria are met: (1) the record clearly establishes what occurred in the trial court; (2) the error breached a clear and unequivocal rule of law; (3) the error adversely affected a substantial right of the complaining party; (4) the error was not waived for tactical purposes; and (5) substantial justice is at stake; that is, the error was so significant that it probably changed the outcome of the trial. If any of these five criteria are not met, we will not grant relief, and complete consideration of all five factors is not necessary when it is clear from the record that at least one of the factors cannot be established. The party claiming plain error has the burden of persuading the appellate court.

*Id.*

Here, there has not been a breach of a clear and unequivocal rule of law nor has a substantial right of the defendant been adversely affected. The defendant's theft convictions arose as the result of two separate takings occurring over nine hours apart. This Court has previously determined that the proper unit of prosecution for aggravated robbery in Tennessee is the number of thefts or takings, not the number of victims. *See State v. Franklin*, 130 S.W.3d 789, 798 (Tenn. Crim. App. 2003). Our review of the record reveals the defendant committed two independent thefts from Best Buy – one around 10:00 a.m. the morning of May 10, 2012, and the second around 7:44 p.m. the same day. The defendant left the store property after taking the first laptop computer, only to return with an accomplice over nine hours later and take another. These are two separate takings, so the defendant's protections against double jeopardy have not been violated. The defendant has not shown a breach of a clear and unequivocal rule of law or that the alleged error violated a substantial right, so he is not entitled to plain error review. The defendant is not entitled to relief on this issue.

## IV.    Expanded Identity Jury Instruction

Relying on *State v. Dyle*, 899 S.W.2d 607 (Tenn. 1995), the defendant argues the trial court erred by issuing the "abbreviated identity instruction" because identity was a key issue in this case. The defendant failed to raise this issue at trial or in his motion for new trial but claims this Court should review the issue for harmless error. The State asserts the defendant has waived the issue and is not entitled to plain error review. We agree the issue has been waived.

In *Dyle*, the Tennessee Supreme Court promulgated a comprehensive jury instruction to be used in cases where identity is a material issue. *Dyle*, 899 S.W.2d at 612. This instruction, which is now part of the Tennessee Pattern Jury Instructions, must be given whenever identification is a material issue, and the instruction is requested by the defendant's counsel. *Id.* Identity is a material issue "when the defendant puts it in issue or the eyewitness testimony is uncorroborated by circumstantial evidence." *Id.* at 612 n.4. It is plain error for the trial court not to give the comprehensive identity jury instruction under these circumstances. *Id.* at 612. "If identification is a material issue and the defendant does not request the instructions, failure to give it will be reviewable under Rule 52 harmless error standard." *Id.*

Again, the closing arguments made by the parties have not been made part of the record before this Court. Based on the questions posed by the defendant's counsel on cross-examination, it appears he challenged the accuracy of his identification by the witnesses for the State. The defendant contends the trial court should have given the comprehensive identification jury instruction promulgated by the *Dyle* court, now Tennessee Pattern Jury Instruction – Criminal 42.05. Had the defendant properly raised this instruction in his motion for a new trial, it would be subject to harmless error review despite his failure to request the instruction at trial. *See Dyle*, 899 S.W.2d at 612. The defendant, however, did not raise this issue in his motion for new trial, so it has been waived. *See* Tenn. R. App. P. 3(e) ("[I]n all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, misconduct of jurors, parties or counsel, or other action committed or occurring during the trial of the case, or other grounds upon which a new trial is sought, unless the same was specifically stated in a motion for new trial; otherwise such issues will be treated as waived."); *see also State v. Turner*, 919 S.W.2d 346, 356-57 (Tenn. Crim. App. 1995) ("A party may not raise an issue for the first time in the appellate court.") Moreover, the transcript from the jury charge conference is noticeably missing from the record before this Court, making the record insufficient to permit review of this issue, again resulting in waiver. Tenn. R. App. P. 36(a). The defendant is not entitled to relief on this issue.

## V.    Jury Request to View the Defendant's Eyes

The defendant additionally contends the trial court abused its discretion when ordering him to stand in front of the jury after the close of proof and during deliberations so the jurors could view his eyes. According to the defendant, this order deprived him of a fair trial and violated his privilege against self-incrimination. The State asserts the trial court's order did not deprive the defendant of a fair trial because three witnesses testified regarding the uniqueness of the defendant's eyes and their importance when identifying the defendant. The State further asserts the trial court's order did not violate his right against self-incrimination because the right does not extend to non-testimonial evidence. We agree the trial court's order deprived the defendant of a fair trial and, accordingly, reverse the judgments of the trial court and remand the cases for a new trial.

The trial court's decision to allow the jury to view the defendant's eyes while deliberating is analogous to re-opening the State's proof. It is within the discretion of the trial court to allow additional proof after a party has announced proof is closed, and this Court will not set aside that decision in the absence of a showing of injustice. *State v. Bell*, 690 S.W.2d 879, 882 (Tenn. Crim. App. 1985). However, if the trial court allows the re-opening of proof, it should be done prior to the final submission of the case to the jury. *See State v. Harold Eugene Pack*, C.C.A. No. 50, 1989 WL 19698, at * 3 (Tenn. Crim. App. March 10, 1989) (quoting *White v. State*, 497 S.W.2d 751 (Tenn. Crim. App. 1973) (stating "[t]he trial court may, in its discretion, allow either side to re-open the proof prior to the case being finally submitted to the jury for determination."); *see also McCrory v. Tribble*, No. W2009-00792-COA-R3-CV, 2010 WL 1610587, *7 (Tenn. Ct. App. April 22, 2010) (finding "[the plaintiff] cites no Tennessee case in which the trial court reopened proof *after* the jury had retired to deliberate, and we have found none") (emphasis in original).

Here, our review of the record reveals the trial court abused its discretion when allowing the jury to view the defendant's eyes while deliberating. The State correctly contends "[i]t is generally recognized that a defendant may be required to exhibit himself in any manner in which an ordinary person is commonly seen in public" and such non-testimonial evidence does not violate a defendant's right against self-incrimination. *State v. Sanders*, 691 S.W.2d 566, 568-69 (Tenn. Crim. App. 1984). While there was testimony concerning the defendant's eyes, neither party presented the defendant as an actual exhibit. Accordingly, the trial court abused its discretion when it essentially re-opened the State's case and allowed the presentation of new evidence in response to a question from the jury posed after the close of all proof and during deliberations.

The State relies heavily on *State v. Jenkins*, 845 S.W.2d 782 (Tenn. Crim. App. 1992). In *Jenkins*, this Court held the trial court did not err when, in response to a question from the jury posed during deliberations, it allowed the jury to listen to a recording of a witness' trial testimony, noting Tennessee joined the majority of

jurisdictions "in allowing the jury to hear evidence again under the guidance and discretion of the trial judge." *Jenkins*, 845 S.W.2d at 792. Our ruling in *Jenkins* is not determinative of this case. During the course of trial, neither party presented the defendant's appearance as non-testimonial evidence by asking him to stand in front of the jury so it could view his eyes in close proximity. Rather, the trial court allowed the jury to view the defendant's eyes up close for the first time after the case had been submitted to the jury, essentially allowing it to view new evidence while deliberating. This was error.

The Supreme Court of Tennessee has recognized two categories of constitutional error – structural and non-structural. *State v. Rodriguez*, 254 S.W.3d 361, 371 (Tenn. 2001). "Structural constitutional errors are errors that compromise the integrity of the judicial process itself" and "'deprive defendants of basic protections without which a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence . . . and no [such] criminal punishment may be regarded as fundamentally fair.'" *Id*. (quoting *Momon v. State*, 18 S.W.3d 152, 165 (Tenn. 1999). Examples of structural constitutional errors include "the complete denial of the right to counsel, racial discrimination in the selection of a grand jury, denial of the right of self-representation at trial, and denial to the right of a trial by jury." *Id*. Structural errors defy harmless error analysis and require automatic reversal. *Id*. All other errors touching on constitutional concerns are non-structural and subject to harmless error analysis, requiring reversal unless the State demonstrates beyond a reasonable doubt the error did not contribute to the verdict. *Id.*

By allowing the jury to view the defendant's eyes in close proximity for the first time after the submission of the case to the jury, the trial court violated the defendant's fundamental right to a fair trial. We have reviewed this as a non-structural constitutional error. The record reveals that at 2:11 p.m., the jury indicated it was deadlocked. After the trial court told the jury to keep working, it asked to view the defendant's eyes at 2:29 p.m. Over the objections of the defendant, the trial court allowed the defendant to stand in front of the jury box so the jury could examine his eyes, and deliberations continued at 2:42 p.m. The jury subsequently returned a guilty verdict at 3:20 p.m. Given the close proximity in time between viewing the defendant's eyes and the return of a guilty verdict by a previously deadlocked jury, the error was not harmless. The State has not proven otherwise beyond a reasonable doubt. Accordingly, the defendant is entitled to a new trial. The judgments of the trial court are reversed, and we remand for a new trial.

## VI.    Instructing the Jury to Continue Deliberation

The defendant contends that the trial court abused its discretion by instructing the jury to "keep working" despite their communications to the trial court that they were

unable to reach a verdict. The state responds that the trial court's instruction was not coercive and the trial court "did not direct its comments to the minority or urge the minority to cede his or her views." We agree with the state.

As a mixed question of law and fact, our standard of review for questions concerning the propriety of jury instructions is *de novo* with no presumption of correctness. *State v. Smiley,* 38 S.W.3d 521, 524 (Tenn. 2001). Under *Kersey v. State,* when the jury advises the trial court that it is deadlocked, the trial court may give supplemental instructions if it "feels that further deliberations might be productive." 525 S.W.2d 139, at 141 (Tenn. 1975). In order to avoid intruding on the province of the jury by "coercing the minority to yield to the majority," when instructing the jury to continue deliberations, the trial court should not "direct any of its comments to jurors in the minority" or "urge such jurors to reevaluate or to cede his or her views to those of the majority." *State v. Baxter,* 938 S.W.2d 697, 704 (Tenn. Crim. App. 1996). *Kersey* advises trial courts that they *may* re-read the portion of the jury charge that explains that the verdict should be unanimous while warning the jurors against "surrender[ing] [their] honest conviction . . . because of the opinion of [their] fellow jurors." *Kersey,* 525 S.W.2d at 145. However, the court is not required to repeat the *Kersey* charge. *See id.* Additionally, when a court chooses to repeat instructions or give supplemental instructions, the instructions must be:

> (1) appropriately indicated by questions or statements from jurors, or from the circumstances surrounding the deliberative and decisional process, (2) comprehensively fair to all parties, and (3) not unduly emphatic upon certain portions of the law to the exclusion of other parts equally applicable to the area of jury misunderstanding or confusion.

*Berry v. Conover,* 673 S.W.2d 541, 545 (Tenn. Ct. App. 1984).

While the record on this issue is sparse, it appears that the jury retired to begin deliberations at 10:52 a.m. on May 14, 2015. Less than two hours into deliberations, the jury sent the trial court a note at 12:20 p.m. reading, "One juror is not convinced that given the state of the evidence the accused is the same individual." The trial court responded, "Re-read p. 10 on identity and unanimous verdict." At 12:38 p.m., the jury sent a second note to the trial court reading, "We will not have a unanimous vote on any count." The trial court responded, "Keep working." After responding to the jury's note, the trial court sent the jury to lunch and instructed them not to discuss the case during lunch. The jury took a lunch break at 12:39 p.m. According to the record, the jury returned to deliberations at 1:45 p.m. Immediately upon returning to deliberations, the jury sent a third letter to the trial court at 1:45 p.m. reading, "The jury is hopelessly deadlocked." Again, the trial court, noting to the parties that the jury had only been

deliberating less than two hours, responded, "Keep working." At 3:20 p.m., the jury returned with its verdict. We note that at no point did the defendant object to the trial court's responses to the jury's notes.

The defendant contends that the trial court's instruction to "keep working" was coercive in light of the fact that the jury claimed to be deadlocked. While the court might have repeated the *Kersey* instructions, the court was not required to do so. *Kersey,* 525 S.W.2d at 145. The court's instruction to the jury to continue deliberations was not coercive. *Baxter,* 938 S.W.2d at 704. Therefore, we conclude that the court's instruction was appropriate, and the defendant's argument is without merit.

## VII.  Sentencing

Finally, the defendant contends that the trial court erred in imposing consecutive terms. While conceding the record supports the trial court's finding that the defendant is an offender whose record of criminal activity is extensive, the defendant argues the sentence imposed "resulted in a sentence that is greater than that deserved" and "not the least severe measure necessary to achieve the purpose for which the sentence is imposed." The State contends that the trial court did not abuse its discretion. We agree with the State.

This Court reviews challenges to the length of a sentence within the appropriate sentence range "under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). A trial court must consider any evidence received at the trial and sentencing hearing, the presentence report, the principles of sentencing, counsel's arguments as to sentencing alternatives, the nature and characteristics of the criminal conduct, any mitigating or statutory enhancement factors, statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee, any statement that the defendant made on his own behalf, and the potential for rehabilitation or treatment. *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991) (citing Tenn. Code Ann. §§ 40-35-103 (2014), -210 (2014); *State v. Moss*, 727 S.W.2d 229, 236 (Tenn. 1986); *State v. Taylor*, 744 S.W.2d 919 (Tenn. Crim. App. 1987)); *see* Tenn. Code Ann. § 40-35-102 (2014).

Likewise, a trial court's application of enhancement and mitigating factors is reviewed for an abuse of discretion with "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *Bise*, 380 S.W.3d at 706-07. "[A] trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Id*. at 706. "So long as there are other reasons consistent with the purposes and principles of sentencing, as

provided by statute, a sentence imposed . . . within the appropriate range" will be upheld on appeal. *Id*.

The abuse of discretion with a presumption of reasonableness standard also applies to the imposition of consecutive sentences. *State v. Pollard*, 432 S.W.3d 851, 859 (Tenn. 2013). A trial court has broad discretion in determining whether to impose consecutive service. *Id*. A trial court may impose consecutive sentencing if it finds by a preponderance of the evidence that one criterion is satisfied in Tennessee Code Annotated section 40-35-115(b)(1)-(7) (2014). In determining whether to impose consecutive sentences, though, a trial court must ensure the sentence is "no greater than that deserved for the offense committed" and is "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(2), (4) (2014); *see State v. Desirey*, 909 S.W.2d 20, 33 (Tenn. Crim. App. 1995).

In determining whether the sentences would be served concurrently or consecutively, the trial court found that the defendant was an offender with an extensive record of criminal activity and that he was a professional criminal. *See id*. §§ 40-35-115(b)(1) (2014) (permitting consecutive sentencing upon a finding that "[t]he defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood), 40-35-115(b)(2) (permitting imposition of consecutive sentencing if the trial court finds that "[t]he defendant is an offender whose record of criminal activity is extensive"). The court stated, "Looking at the presentence report it is evidence also that he has numerous convictions and he has been committing crimes since he turned eighteen." The court also stated,

> [The defendant] doesn't really say anything of importance as far as employment and he's been committing crimes and really serving – most of his adult life it seems like he's been in jail. He'll get out, commit another crime and go back to jail, it seems like he likes being in jail. But, he certainly hasn't produced anything worthwhile for society by way of anything other than keeping the police in – securing their job security, the police and the jailers and the Judges and the prosecutors and defense lawyers.

Based on these findings, the trial court imposed consecutive six year terms for an effective sentence of 12 years.

Despite the defendant's claim to the contrary, the record supports the trial court's findings relative to the consecutive sentencing. The defendant's lengthy record consists of at least twenty prior convictions including numerous robbery and theft convictions, convictions for aggravated and simple assault, criminal trespass, several drug

convictions, and one weapons charge. Additionally, at the time of the defendant's trial in the instant matter, he had two additional theft cases pending and awaiting trial. The defendant has failed to show that the court abused its discretion in imposing consecutive sentences. Accordingly, he is not entitled to relief on this basis.

### *Conclusion*

In accordance with the aforementioned reasoning and authorities, we reverse the judgments of the trial court, and remand for a new trial.

_____

J. ROSS DYER, JUDGE