# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### March 4, 2025 Session

## STATE OF TENNESSEE v. MICHAEL GREEN a/k/a MICHAEL CHEAIRS

**Appeal from the Circuit Court for Madison County**
**No. 22-936   Joseph T. Howell, Judge**
_____

## No. W2024-00370-CCA-R3-CD
_____

The Defendant, Michael Green a/k/a Michael Cheairs, appeals his Madison County Circuit Court jury conviction of violating the sex offender registry requirements, *see* Tenn. Code Ann. § 40-39-208, arguing that the admission of and testimony about the violation report by someone other than the officer who prepared it violated the Confrontation Clause and that the error was not harmless beyond a reasonable doubt because the report was the only evidence supporting his conviction. The State argues that the Defendant waived plenary review of the issue, and that he is not entitled to relief via plain error review. Upon review, we conclude that the Defendant properly preserved the issue below and agree that the admission of the violation report via a substitute witness violated the Confrontation Clause. The error was not harmless beyond a reasonable doubt because the inadmissible statements in the report were the primary evidence of the Defendant's guilt. Accordingly, we reverse the Defendant's conviction and remand the case to the trial court for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

ROBERT W. WEDEMEYER, P.J,. delivered the opinion of the court, in which JOHN W. CAMPBELL, SR., J., joined. MATTHEW J. WILSON, J., filed a dissenting opinion.

William W. Gill, Assistant Public Defender, Appellate Division (on appeal); Parker O. Dixon and Tyler Graham, Assistant District Public Defenders (at trial), for the appellant, Michael Green aka Michael Cheairs.

Jonathan Skrmetti, Attorney General and Reporter; John H. Bledsoe, Deputy Attorney General; J. Katie Neff, Assistant Attorney General; Jody Pickens, District Attorney General; and Michelle Pugh, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION
## I. Factual and Procedural History

In 2001, the Defendant was convicted of rape in Hardeman County and ordered to register as a sex offender and to comply with the requirements of the Sex Offender Registry. On August 10, 2021, Evelyn Stigler[1] with the Tennessee Department of Correction Board of Probation and Parole filed a Sex Offender Registry violation report, stating that the Defendant had failed to report a change in residence within forty-eight hours and that he had failed to report during the month of June 2021. Ms. Stigler recommended that a violation warrant be issued. There is no Violation Warrant in the record on appeal, but, in November 2022, the Madison County Grand Jury returned an indictment charging Defendant with violating the requirements of the Sex Offender Registry.

The indictment alleged that "on or about July 1, 2021," the Defendant "did unlawfully and knowingly fail to register or report in person within 48 hours of establishing or changing a primary or secondary residence, in violation of Tennessee Code Annotated §40-39-203(a)(1)." Code section 40-39-203(a)(1) provides, in pertinent part: "Within forty-eight (48) hours of establishing or changing a primary or secondary residence, establishing a physical presence at a particular location, . . . the offender shall register or report in person, as required by this part." Tenn. Code Ann. § 40-39-203(a)(1). Code section 40-39-208 provides that "[i]t is an offense for an offender to knowingly violate any provision of this part," and the "[f]ailure of an offender to timely register or report" is listed among the means of violating the law. Tenn. Code Ann. § 40-39-208(a)(1).

The case proceeded to trial on December 19, 2023. Following jury selection, defense counsel approached the trial court and noted that the defense was "in a bit of a quandary," explaining, "It was our understanding from the indictment and from the list of witnesses that Evelyn Stigler is the prosecutor of this case and the witness, but at trial here we have someone different." Defense counsel moved for a mistrial and asked that the case be dismissed because "that's going to deprive [the Defendant] of his right to confront and cross-examine his accusers." The State replied that Ms. Stigler was "no longer employed by the department, TDOC probation and parole" and said that "Millicent Mann was her supervisor." The State asserted that Ms. Mann had "signed several documents as supervisor of Evelyn Stigler." Instead of addressing the Defendant's Confrontation Clause claim, however, the State argued that "there's no prejudice" because the Defendant "had ample notice that Ms. Mann was heavily involved in this case." The Defendant offered no further argument and did not otherwise clarify the basis for his objection. The trial court

---

[1] We utilize the spelling of this witness's name as it appears on the violation report that bears her signature.

denied the motion without analysis but "note[d] the objection for the record" to "preserve" the issue for appeal.

Ms. Mann testified that she worked as a "director of the specialized caseload unit," which was tasked with supervising "all registered sex offenders." Ms. Mann explained the existence of the Sex Offender Registry and the rules that offenders on the registry must follow. Ms. Mann said that her agency was required to send Sex Offender Registry records to the Tennessee Bureau of Investigation ("TBI"). Ms. Mann identified "the certified records from TBI" pertaining to the Defendant, and the Defendant objected on grounds that the file contained evidence of the Defendant's criminal and supervision history that was inadmissible. The trial court admitted those records into evidence over the Defendant's objection but ordered the State to redact any inadmissible information before sending the records back to the jury. The records memorialized Ms. Stigler's supervision of the Defendant, including home visits and interviews that, when taken together, showed that the Defendant had not reported his change of address within 48 hours. Ms. Mann testified that at the time of the alleged violation in this case, Ms. Stigler supervised the Defendant and that Ms. Mann was her "manager." In that role, Ms. Mann "approved" reports prepared by Ms. Stigler. After reading the violation report from the TBI records, Ms. Mann told the jury that "[the] Defendant failed to update his address within 48 hours." She explained that a change of address must be reported in person. Ms. Mann, reading directly from the violation report prepared by Ms. Stigler, told the jury that on June 23, 2021, the Defendant "contacted his officer via telephone and told the officer that he had moved earlier that month." Ms. Mann said that, according to the report, the Defendant told Ms. Stigler that he had moved to 1086 North Highland Avenue and that Ms. Stigler told the Defendant he would have to move because that address was located within 1,000 feet of a school. Ms. Mann testified that the Defendant's file contained no information indicating that the Defendant had moved.

During cross-examination, Ms. Mann confirmed that at the time of the alleged violation, she did not personally supervise the Defendant and agreed that Ms. Stigler would have prepared "any and all documents related to this case." Ms. Mann said that Ms. Stigler had retired and that Ms. Mann had had no contact with Ms. Stigler after her retirement. Ms. Mann conceded that she did not prepare the violation report and that she only "reviewed it." She acknowledged that she had no personal information regarding the violation but agreed that it was her "understanding of the violation" charged in the indictment that the Defendant had failed to report in person on July 1, 2021. Ms. Mann said that, based upon the records her department sent to the TBI, the Defendant "did not report at all throughout the month of June" but that she had "nothing that documents that he did not report" on July 1, 2021. She explained, "I don't have any [records] that he didn't [report], and I don't have anything he did."

- 3 -

At the conclusion of Ms. Mann's testimony, the State rested. The Defendant moved the trial court for a judgment of acquittal on grounds that the State had presented "no documentation about [the Defendant] not appearing on July 1st" as alleged in the indictment. The Defendant did not renew his Confrontation Clause challenge. The State argued that the Defendant's failure to report was a continuing violation that began when he failed to report after being told to move on June 23, 2021. The trial court agreed that "[the] Defendant's got a legitimate argument," but nevertheless denied the Defendant's motion.

Following a full *Momon* colloquy, the Defendant elected not to testify and chose to present no proof.

During closing argument, the State pointed to the information contained in the violation report prepared by Ms. Stigler as proof that the Defendant had violated the reporting requirements of the Sex Offender Registry. The State specifically told the jury "not [to] hold probation and parole accountable for the fact that [Ms. Stigler] has moved on to greener pastures." The State asked the jury to find the Defendant guilty as charged based on the information and records presented by Ms. Mann.

Based on the proof presented, the jury convicted the Defendant as charged and imposed a $500 fine. At a sentencing hearing, the trial court sentenced Defendant as a Range III, persistent offender to six years of incarceration.

The Defendant filed a timely but unsuccessful motion for new trial, wherein he challenged, among other things, the fact that Ms. Stigler "was not there for [the Defendant] to confront." The Defendant's motion did not fully flesh out a Confrontation Clause challenge. The State, again, did not address the Defendant's Confrontation Clause argument, stating only that the Defendant "had notice that Officer Mann could be a witness, and could provide testimony as the supervisor in this case." In denying the motion, the trial court stated only, "As to the witness issue, I note there were certified records presented of Ms. [Stigler's] reports through her supervisor."

## II. Analysis

In this appeal, the Defendant argues that permitting Ms. Mann to testify to the contents of the violation report and other documents prepared by Ms. Stigler violated his constitutional right to confront the witnesses against him and that the error cannot be classified as harmless beyond a reasonable doubt. The State asserts that the Defendant waived plenary consideration of this issue and that the Defendant is not entitled to plain error review. The Defendant asserts that he is entitled to plenary review and that, in any event, he is entitled to relief under plain error review.

- 4 -

## A. Waiver

The State contends that the Defendant's request for a mistrial and dismissal of the case was insufficient to preserve the Confrontation Clause issue for plenary appellate review because the Defendant "made no attempt to exclude evidence based on the Confrontation Clause" and because "the trial court examined the issue as a request for mistrial or dismissal." The State further asserts that the Defendant waived plenary review by failing to make a contemporaneous objection to the admission of the violation report or other TBI records on constitutional grounds. The State additionally faults the Defendant for "abandon[ing]" his mistrial argument on appeal by asking solely for dismissal.

The Defendant addressed the State's waiver argument his reply brief, arguing that he preserved his Confrontation Clause challenge by raising the claim "in a timely and specific manner during a jury-out proceeding held before opening statements" during which he alleged that "allowing the State to call 'someone different' to introduce the information and statements supplied by Officer Stigler would '***deprive [him] of his right to confront and cross-examine his accusers***." The Defendant pointed out that the trial court noted the objection for the record and further stated that the "***issue has been preserved for any appellate review***." The Defendant observed that he reiterated his claim in his motion for new trial, arguing that the trial court erred by refusing to dismiss the case or declare a mistrial on grounds "that he was ***deprived of the right to confront his accuser***" when the State "did not produce the witness accusing [him] of failing to report as a sex offender." Finally, the Defendant stated that he has presented the exact same claim and asked for the same relief as he did in the court below.

"Appellate review generally is limited to issues that a party properly preserves for review by raising the issues in the trial court and on appeal." *State v. Minor*, 546 S.W.3d 59, 65 (Tenn. 2018) (citing first Tenn. R. Crim. P. 51; and then Tenn. R. Evid. 103(a)-(b); and then Tenn. R. App. P. 3(e); 13(b), 27(a)(4), 36(a); and then *State v. Bledsoe*, 226 S.W.3d 349, 353-54 (Tenn. 2007)). "Issue-preservation requirements promote efficiency and judicial economy by 'enabl[ing] a trial court to avoid or rectify an error before a judgment becomes final' and 'fostering the expeditious avoidance or correction of errors before their full impact is realized.'" *State v. Bristol*, 654 S.W.3d 917, 926 (Tenn. 2022) (quoting *Minor*, 546 S.W.3d at 65; and then citing *State v. Vance*, 596 S.W.3d 229, 253 (Tenn. 2020)). "In deciding whether a party has waived an issue on appeal, we do not exalt form over substance but instead review the record carefully to determine whether a party is raising an issue for the first time on appeal." *State v. Harbison*, 539 S.W.3d 149, 165 (Tenn. 2018) (citing *Fayne v. Vincent*, 301 S.W.3d 162, 171 n.6 (Tenn. 2009)).

### 1. The Defendant's Objection

Issue preservation begins with "a timely and specific objection in the trial court either at or before trial." *State v. Reynolds*, 635 S.W.3d 893, 926-27 (Tenn. 2021) (citing first Tenn. R. Evid. 103(a); and then *Vance*, 596 S.W.3d at 253).

Here, the Defendant indicated to the trial court immediately after jury selection that he was facing a "quandary" because he had learned that the State did not intend to present Ms. Stigler, the preparer of the report, as a witness at trial. He insisted that a trial in Ms. Stigler's absence would violate his right to confront and specifically to cross-examine the only witness against him. Although the Defendant did not specify whether his objection was based on the state or federal constitution, the Tennessee Supreme Court has held that the analysis is the same under both. *State v. Dotson*, 450 S.W.3d 1, 62 (Tenn. 2014).

The record belies the State's claim that the Defendant was actually "concerned with the unfair surprise created by the change in witnesses" and not his ability to confront Ms. Stigler. The Defendant clearly and unequivocally asserted that Ms. Stigler's absence would deprive him "of his right to confront and cross-examine his accusers." The State, not the Defendant, addressed the issue as one of notice, arguing that "there's no prejudice" and that the Defendant "had ample notice that Ms. Mann was heavily involved in this case." Before the Defendant could respond to the argument, the trial court denied the motion without analysis. Thus, contrary to the State's argument, both the State and the trial court had the *opportunity* to address the Defendant's Confrontation Clause claim. Responsibility for their failure to fully address the Defendant's claim should not lie with the Defendant. To preserve an issue, "it is sufficient that [the] party" informed the trial court of "(1) the action that the party desires the court to take; or (2) the party's objection to the action of the court and the grounds for the objection." Tenn. R. Crim. P. 51(b). "If a party has no opportunity to object to a ruling or order, the absence of an objection does not later prejudice that party." *Id.* Moreover, the trial court not only noted "the objection for the record" but stated explicitly that the issue had "been preserved for any appellate review.

We are not persuaded by the State's argument that a Confrontation Clause claim was not ripe when the Defendant objected because the proof had yet to begin. This was a one witness trial, and the Defendant objected as soon as it became clear that that witness would not be Ms. Stigler. As an appellate court, we must remain mindful that "[t]rials are fluid processes and contain many moving parts." *Vance*, 596 S.W.3d at 254. In our view, the Defendant's objection was timely under the circumstances and sufficiently specific to preserve the issue for our review.

Moreover, because Ms. Mann was the State's only witness and because the trial court had already noted his objection for the record, the Defendant did not need to renew his objection when she testified to the contents of the violation report and other documents

prepared by Ms. Stigler. The Defendant's objection was in the nature of a motion in limine, and we have held that "[f]or the purpose of preserving the record for appeal, we consider an objection to be contemporaneous if trial counsel objects in the form of a motion in limine and obtains a ruling on the issue from the trial court." *State v. Sunde*, No. M2012-02395-CCA-R3CD, 2014 WL 492347, at *4 (Tenn. Crim. App. Feb. 6, 2014) (citing *State v. Alder,* 71 S.W.3d 299, 302 (Tenn. Crim. App. 2001)). Under these circumstances, we conclude that the Defendant's objection was sufficiently timely and specific to preserve the issue for plenary review.

## 2. Motion for New Trial

The second step in issue preservations requires presenting "the issue in a motion for a new trial." *Reynolds*, 635 S.W.3d at 926-27 (citing first Tenn. R. App. P. 3(e)); and then *Harbison*, 539 S.W.3d at 164). "In a motion for new trial, the defendant must set forth the factual grounds on which he relies, the legal grounds for the trial court's ruling, and a concise statement as to why the trial court's decision was in error." *Id.* (quoting *State v. Harbison*, 539 S.W.3d 149, 164-65 (Tenn. 2018)). When crafting argument in a motion for new trial, a defendant should not "simply allege, in general terms, that the trial court committed error, either by taking some action or by admitting or excluding evidence" but should "identify the specific circumstances giving rise to the alleged error so that it may be reasonably identified in the context of the entire trial." *Fahey v. Eldridge*, 46 S.W.3d 138, 142-43 (Tenn. 2001) (citing *State v. Ashburn,* 914 S.W.2d 108, 114 (Tenn. Crim. App. 1995)). "[A] precise citation to a particular statute or case as the legal basis for the assertion is not required." *Harbison*, 539 S.W.3d at 164 (citing *Fahey*, 46 S.W.3d at 143). "Grounds not raised in a motion for new trial are waived for purposes of appeal." *Id.*

In this case, the Defendant argued in his motion for new trial that the trial court's failure to dismiss the case or declare a mistrial "deprived" him "of the right to confront his accuser, Officer [Stigler], because the State did not produce the witness accusing [the Defendant] of failing to report as a sex offender." Generally, "a well-drafted motion alleging improper admission or exclusion of testimony," "should identify the witness giving the testimony and provide a short and plain summary of the testimony improperly admitted or excluded," but this was a one-witness trial, so the absence of a direct reference to Ms. Mann or her testimony was not fatal. The Defendant's motion identified "with reasonable clarity, the legal ground upon which the trial court based its actions and contain a concise statement asserting the legal reasons why the court's decision was improper." *Fahey*, 46 S.W.3d at 143.

The Defendant did not supplement his skeletal claim with evidence or argument at the hearing on the motion for new trial, but the nature of the alleged error was obvious from the context. Despite that the Defendant made a Confrontation Clause argument, it is

not clear whether the trial court analyzed the claim under a Confrontation Clause rubric. We will not fault the Defendant for the trial court's decision not to offer a more thorough analysis

When reviewing "a motion for a new trial under Rule 3(e)," however, this court must "view the motion in the light most favorable to the appellant, and it should resolve any doubt as to whether the issue and its grounds were specifically stated in favor of preserving the issue" because "[a]ny other method of review would result in needlessly favoring 'technicality in form' over substance." *Fahey*, 46 S.W.3d at 143. This court, while authorized to "supplement[] the contentions of counsel through our own deliberation and research," "will not remedy the defect" caused in the first instance by the Defendant's failure to properly address the issue, "especially where, as here, 'important questions of far-reaching significance' are involved.'" *Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983) (quoting *Alabama Power Co. v. Gorsuch,* 672 F.2d 1, 7 (D.C. Cir. 1982)); *see also Bristol*, 654 S.W.3d at 925. Even though the Defendant's motion for new trial "was not a model of precision or clarity," the motion was "was sufficient to direct the trial court's and the State's attention to his challenge to" the Confrontation Clause challenge. *Harbison*, 539 S.W.3d at 166. Certainly, his motion "allowed the trial court to consider the issue and make an appropriate ruling." *Id.* (citing *Fahey*, 46 S.W.3d at 142).

### 3. Issue Presented on Appeal

In this appeal, the Defendant does exactly what he did in the trial court, he argues that the admission of Ms. Stigler's testimonial hearsay statements violated his constitutional right to confront the witnesses against him. It is true that the Defendant's argument on appeal is far more extensive than it was in the trial court. That is as it should be. Our supreme court has observed that "because motions for a new trial should not be expanded 'into all the voluminosity of briefs and printed arguments,' the movant is not required to identify such errors in the motion with the same precision expected in the appellate courts." *Fahey*, 46 S.W.3d at 143 (quoting *National Hosiery & Yarn Co. v. Napper*, 135 S.W. 780, 784 (Tenn. 1911)). That the Defendant asks solely for the remedy of dismissal on appeal does not, as the State suggests, impact the reviewability of his claim. "A party does not waive an issue by phrasing it differently in the trial court than on appeal." *Harbison*, 539 S.W.3d at 165 (citing *Fahrner v. SW Mfg., Inc.*, 48 S.W.3d 141, 143 n.1 (Tenn. 2001)). Furthermore, the Defendant's single issue has been admirably briefed in this court.

The supreme court has warned that appellate courts should not "[r]eview[] an unpreserved and unpresented issue" on appeal because doing so "presents an especially strong risk of unfairness and prejudice." *Bristol*, 654 S.W.3d at 927. In *Bristol*, however, this court reviewed an issue regarding the jury instructions that had not even been

mentioned during the trial, in the motion for new trial, or in either party's appellate brief. *See id.* Relying on both the party presentation principle and issue-preservation requirements, the court concluded that this court erred by considering the issue without at least providing the parties an opportunity to address the issue. *See id.* at 924-26, 928. The situation in this case bears no resemblance to that in *Bristol*. Here, the Defendant objected at trial, raised the issue in his motion for new trial, and thoroughly argued the issue on appeal, supporting his argument with citations to the record and applicable law.

Our supreme court has "emphasized the importance of applying the Rules of Appellate Procedure to reach a just result," saying that "the overall intent of the rules is to allow cases to be resolved on their merits" and holding that "[a] court's construction and application of the rules should further that intent and should enhance, not impede, the search for justice." *Trezevant v. Trezevant*, 696 S.W.3d 527, 530-31 (Tenn. 2024) (quoting *Johnson v. Hardin,* 926 S.W.2d 236, 238-39 (Tenn. 1996)). To this end, the court observed, "Tennessee appellate courts must give thoughtful consideration to the intent of the rules each time a procedural matter is resolved." *Id.* Importantly, we must "disregard technicality in form in order to determine every appellate proceeding on its merits." *Id.* In *Trezevant*, the court reversed the court of appeals decision declining to consider certain issues "because it incorrectly viewed the stated issues as inadequate to encompass them." *Id.* at 531. *Trezevant* reiterates the principle that "just as parties must endeavor to specifically state the issues raised so as to avoid any potential for future waiver, appellate courts should not lightly dismiss an issue on appeal under a strict or technical application of Rule 3(e)." *Fahey*, 46 S.W.3d at 143-44. Recently, the court again emphasized that "[g]iven 'the importance of applying the Rules of Appellate Procedure to reach a just result,' Tennessee courts must reasonably exercise their discretion to excuse technical deficiencies that do not significantly impede the appellate process." *DiNovo v. Binkley*, 706 S.W.3d 334, 336 (Tenn. 2025) (first quoting *Trezevant*, 696 S.W.3d at 531; and then citing Tenn. R. App. P. 2; Tenn. Ct. App. R. 1(b)). Although *DiNovo* dealt with the court of appeals hyper technical application of the rules regarding the contents of briefs, the same principles apply to issue-preservation requirements considering "Tennessee's longstanding policy favoring resolution of appeals on the merits." *Id.* at 337 (citing *Trezevant*, 696 S.W.3d at 530).

Bearing these principles in mind and remaining cognizant that we must not "exalt form over substance but instead review the record carefully to determine whether a party is raising an issue for the first time on appeal," we conclude that the Defendant has not waived plenary review of this issue. *Reynolds*, 635 S.W.3d at 927 (quoting *Harbison*, 539 S.W.3d at 165.

**B. Confrontation Clause**

"One of the bedrock constitutional protections afforded to criminal defendants is the Confrontation Clause of the Sixth Amendment, which states: 'In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.'" *Hemphill v. New York*, 595 U.S. 140, 150 (2022) (quoting U.S. Const. amend. VI); *Pointer v. Texas*, 380 U.S. 400, 403 (1965) (holding "that the Sixth Amendment's right of an accused to confront the witnesses against him is likewise a fundamental right and is made obligatory on the States by the Fourteenth Amendment"); *State v. Cannon*, 254 S.W.3d 287, 301 (Tenn. 2008) ("The fundamental right of confrontation applies through the Fourteenth Amendment to the states."). Similarly, article I, section 9 of the Tennessee Constitution guarantees the right to confrontation, providing "[t]hat in all criminal prosecutions, the accused hath the right to . . . meet the witnesses face to face." Tenn. Const. art. I, § 9. Even though the language of the two constitutional provisions differs, our supreme court has "expressly adopted and applied the same analysis used to evaluate claims based on the Confrontation Clause of the Sixth Amendment." *State v. Dotson*, 450 S.W.3d 1, 62 (Tenn. 2014) (citations omitted); *see also Cannon*, 254 S.W.3d at 301.

The Confrontation Clause "protects a defendant's right of cross-examination by limiting the prosecution's ability to introduce statements made by people not in the courtroom." *Smith v. Arizona*, 602 U.S. 779, 784 (2024). "Where testimonial evidence is at issue . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 68 (2004).

Turning to the facts of this case, we begin with the basics: was Ms. Stigler unavailable and did the Defendant have an opportunity to cross-examine her? *See Smith*, 602 U.S. at 784 (reiterating that the Confrontation Clause "bars the admission at trial of an absent witness's statements—however trustworthy a judge might think them—unless the witness is unavailable and the defendant had a prior chance to subject her to cross-examination"). The State told the trial court that it would not call Ms. Stigler to testify because she had retired and that it would instead call Ms. Mann to present the materials prepared by Ms. Stigler, who was her subordinate. The Defendant did not have an opportunity to cross-examine Ms. Stigler before trial. These facts align with those presented in *Smith*. There, the analyst who performed scientific analysis of the drugs seized from Smith had "stopped working at the lab, for unexplained reasons[,] [a]nd the State chose not to rely on the now-former employee as a witness" but to offer testimony of a substitute expert to provide an "independent" opinion. *See id. at* 790. Because *Smith* had not had a prior opportunity to cross-examine the substitute expert, the Supreme Court went on to determine whether the substitute expert's testimony violated the Confrontation Clause. *Id.* at 792 (noting that it had granted certiorari to consider the Arizona Court of Appeals' conclusion that a substitute expert could present an "independent expert opinion[]" based on review of the testing analyst's work). Because Ms. Stigler was not

available for cross-examination at trial and because the Defendant did not have a prior opportunity to cross-examine her, we must determine whether Ms. Mann's testimony, which relied entirely on Ms. Stigler's statements, violated the Defendant's constitutional right to confrontation.

The issue of whether the admission of an out-of-court statement violated the Confrontation Clause is "a pure question of law" that is "subject to de novo review." *State v. Franklin*, 308 S.W.3d 799, 809 (Tenn. 2010) (citations omitted). "The Clause's prohibition 'applies only to testimonial hearsay'—and in that two-word phrase are two limits." *Id.* at 784 (quoting *Davis v. Washington*, 547 U.S. 813, 823 (2006).

### 1. Are the statements testimonial?

Because the Confrontation Clause "confines itself to 'testimonial statements,' a category whose contours [the Supreme Court has] variously described," *id.* at 779, "when an accused challenges the admissibility of a statement under the Confrontation Clause, the threshold question is whether the statement is testimonial or nontestimonial," *Cannon*, 254 S.W.3d at 301 (Tenn. 2008); *see also Dotson*, 450 S.W.3d at 63 (confirming that "the threshold question in every case where the Confrontation Clause is relied upon as a bar to the admission of an out-of-court statement is whether the challenged statement is testimonial"). The Supreme Court has yet to settle on a definition of "testimonial" for Confrontation Clause purposes. *Smith*, 602 U.S. at 784-85 (citing first *Davis*, 547 U.S. at 822 ("statements 'made in the course of police interrogation' were testimonial when 'the primary purpose of the interrogation [was] to establish or prove past events potentially relevant to later criminal prosecution'"); and then *Michigan v. Bryant*, 562 U.S. 344, 358, 359 (2011) ("statements made to police 'to meet an ongoing emergency' were 'not procured with a primary purpose of creating an out-of-court substitute for trial testimony'"); and then *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 311 (2009) ("testimonial certificates of the results of forensic analysis were created 'under circumstances which would lead an objective witness reasonably to believe that the statement[s] would be available for use at a later trial'")) (alterations in *Smith*). In *Williams v. Illinois*, no definition of "testimonial" garnered a majority. *See Williams v. Illinois*, 567 U.S. 50, 82 (2012), *abrogated by Smith*. Later, our own supreme court, attempting to reconcile the opinions in *Williams*, concluded that "an out-of-court statement is testimonial . . . if its primary purpose is evidentiary and it is either a targeted accusation or sufficiently formal in character." *Dotson*, 450 S.W.3d at 69 (citation omitted).

As the Supreme Court recognized, the "opinions in *Williams* 'have sown confusion in courts across the country.'" *Smith*, 602 U.S. at 789 (quoting *Stuart v. Alabama*, 139 S. Ct. 36, 36-37 (2018) (Gorsuch, J., dissenting from denial of certiorari)); *see also Franklin v. New York*, 145 S. Ct. 831, 831 (2025) (Alito, J., statement respecting denial of certiorari)

("Despite repeated attempts to explain what *Crawford* meant by 'testimonial statements,' our Confrontation Clause jurisprudence continues to confound courts, attorneys, and commentators."). Although the *Smith* majority did not reach the issue of whether statements at issue in that case were "testimonial," it did crystalize its earlier tests, observing that the question "focuses on the 'primary purpose' of the statement, and in particular on how it relates to future criminal proceedings." *See id.* at 800. The *Smith* majority appears to have jettisoned the "targeted accusation" portion of the combined opinions in *Williams*, choosing instead to focus on the "primary purpose" of the evidence, stating that a court must examine the offered statement to "determine, given all the 'relevant circumstances,' the principal reason it was made." *See id.* at 800-01 (citing *Bryant*, 562 U.S. at 369)); *see also Franklin*, 145 S. Ct. at 833-34 (2025) (Gorsuch, J., statement respecting denial of certiorari) (noting that the Court had endorsed the primary purpose test in *Smith* but had not actually defined the parameters of the test). In offering guidance, the *Smith* majority stated that a statement is testimonial when "the document's primary purpose [has] 'a focus on court.'" *Smith*, 602 U.S. at 802 (2024). *But see id.* at 807 (Gorsuch, J., concurring) ("I worry that the Court's proposed 'primary purpose' test may be a limitation of our own creation on the confrontation right.").

Here, the Defendant objected to the introduction of the violation report prepared by Ms. Stigler, which contained Ms. Stigler's statements regarding her supervision and investigation of the Defendant, including statements Ms. Stigler purportedly made to the Defendant and statements the Defendant made to Ms. Stigler, through Ms. Mann. The operative statements, those statements that supported the Defendant's conviction of violating Sex Offender Registry requirements, came directly from the narrative in the violation report. Ms. Stigler, who referred to herself as "the affiant," stated that the Defendant "was contacted via telephone" on June 23, 2021, and that, at that time, "he advised that he moved to 1086 N Highland Ave, Jackson, TN at the beginning of the month." This, according to the report, was a violation of Code section 40-39-203 because the Defendant "failed to report his change in residence to his registering agency within 48 hours." Ms. Stigler also stated that the Defendant "failed to report to his designated registering agency during the month of June 2021."

It is our view that, utilizing either the test proscribed by our supreme court in *Dotson* or the slightly more refined test endorsed by the Supreme Court in *Smith*, the statements at issue were testimonial. First, Ms. Stigler referred to herself as "the affiant," and the violation report was appended to the Affidavit of Complaint to serve as the basis for a finding of probable cause to charge the Defendant with violating the Sex Offender Registry. The focus of the document was on court, the document was a targeted accusation against the Defendant, and it was sufficiently formal in character. *See Smith*, 602 U.S. at 802; *Dotson*, 450 S.W.3d at 69 (citation omitted). This is true even if, arguably, the State did not anticipate using the document itself in a later trial because it certainly contemplated

using Ms. Stigler's statements at trial. *See Melendez-Diaz*, 557 U.S. at 310–11 (finding that analyst's "certificates" were testimonial when they contained "the precise testimony the analysts would be expected to provide if called at trial"). Ms. Stigler twice stated that she, as "the affiant will show through documentation and testimony that the offender has violated the rules of the TBI Sex Offender Registry."

## 2. Were the statements offered for their truth?

Having concluded that the statements at issue were testimonial, we turn then to whether the statements were hearsay because the Confrontation Clause bars "only the introduction of hearsay—meaning, out-of-court statements offered 'to prove the truth of the matter asserted.'" *Smith*, 602 U.S. at 785 (quoting *Anderson v. United States*, 417 U.S. 211, 219 (1974)). "Not long after *Crawford*, the Court made clear that the Confrontation Clause applies to forensic reports" and later explained that the Confrontation Clause prohibits the admission of "one lab analyst's written findings through the testimony of another." *Id.* at 785-86 (citing *Bullcoming v. New Mexico*, 564 U.S. 647, 651-652 (2011)). *Smith* involved the admission of testimony from a substitute expert who was not directly involved in analyzing the drugs seized from Smith but instead "prepared for trial by reviewing [another analyst's] report and notes" and "referred to those materials and related what was in them, item by item by item" at trial. *Id.* at 791. The Court observed that "truth is everything when" an expert "conveys an out-of-court statement" to support his opinion because "the truth of the basis testimony is what makes it useful to the prosecutor; that is what supplies the predicate for—and thus gives value to—the state expert's opinion." *Id.* at 795.

If such a statement is "also testimonial," then its "admission violate[s] the Confrontation Clause" unless the defendant is afforded the "right to confront the person who actually did the . . . work, not a surrogate merely reading from her records." *Id.* at 800. The Court observed that to hold otherwise would render the Court's earlier decisions "a dead letter, and allow for easy evasion of the Confrontation Clause." *Id.* at 798. "A State may not introduce the testimonial out-of-court statements of a forensic analyst at trial, unless she is unavailable and the defendant has had a prior chance to cross-examine her" and may not "introduce those statements through a surrogate analyst who did not participate in their creation." *Id.* at 802-03 (citing first *Crawford*, 541 U.S. at 68; and then *Melendez-Diaz*, 557 U.S. at 311; and then *Bullcoming*, 564 U.S. at 663)).

Although our supreme court has not had occasion to determine whether a Sex Offender Violation report is analogous to a forensic analyst's report for purposes of a Confrontation Clause analysis, it is our view such documents fall within the Confrontation Clause protections. *See, e.g.*, *Jenkins v. Commonwealth*, 835 S.E.2d 918, 923–24 (Va. Ct. App. 2019) (stating that "[a] probation violation report falls into the category of testimonial

- 13 -

hearsay" (citing *Cox v. Commonwealth*, 65 Va. App. 506, 517-21 (2015)). At the time of the Defendant's trial, no clear and unequivocal rule of law established that a Sex Offender Registry violation report should be analyzed as testimonial hearsay, but the testimonial nature of the document should have been obvious due to its nature as an affidavit.

Similarly, Ms. Stigler's statements unquestionably came in for their truth. How could it be otherwise given that "only if true can they provide a reason to" find that the Defendant violated the Sex Offender Registry Requirements? *Id.* at 803. In the violation report, Ms. Stigler memorialized a telephone conversation with Defendant that the State used as evidence to establish that the Defendant had failed to report his change of address within forty-eight hours. If this was not true, then the statements would be irrelevant. *See, e.g.*, *State v. McGill*, No. M202200501CCAR3CD, 2023 WL 2033804, at *4 (Tenn. Crim. App. Feb. 16, 2023) (finding that witness's "statements about the [d]efendant living at 702 Freedom Lane were . . . offered by the State for their truth" and that her "statements about the [d]efendant's residency only had relevance to the extent that they were true") (citing *State v. Padgett*, No. E2018-00447-CCA-R3-CD, 2019 WL 2233890, at *7 (Tenn. Crim. App. May 23, 2019) (holding that statements was "inadmissible hearsay" because they "would only be relevant if it was true, and thus, the statements do not have any probative value outside of their truthfulness")). Because they were also testimonial, their admission violated the Confrontation Clause.

That Ms. Mann signed the violation report as a reviewer and that she generally managed Ms. Stigler as she supervised the Defendant does not change our conclusion. In *Smith*, the substitute expert had reviewed all the test notes, test results, and reports generated by the analyst who performed the testing before offering at trial his "independent" conclusion that the substances at issue were drugs. Nevertheless, the Court found that his testimony violated the Confrontation Clause because his "independent" conclusion relied on work completed by the original analyst. *Id.* ("That means Arizona does not escape the Confrontation Clause just because Rast's records came in to explain the basis of Longoni's opinion."). As in *Smith*, the testifying witness, Ms. Mann, relied entirely on the work produced by Ms. Stigler. *See id.* at 798; *see also United States v. Seward*, 135 F.4th 161, 168–69 (4th Cir. 2025) (finding Confrontation Clause violation when substitute DNA analyst "relied on the work produced by another analyst to reach her expert conclusions (citing *Smith*, 602 U.S. at 798)). Stated differently, even though Ms. Mann signed the violation report (and other documents related to Ms. Stigler's supervision of the Defendant), she could only have testified that Defendant violated the Sex Offender Registry requirements if she "accepted the truth of what [Ms. Stigler] reported about her work." *Id.*

Because the challenged statements were offered for their truth and because they were testimonial, their admission violated the Confrontation Clause under the analysis in *Smith*.

### 3. Was the error harmless?

"The erroneous admission of testimony in violation of an accused's right of confrontation is not structural error mandating reversal" and is, instead, "subject to harmless error review." *Cannon*, 254 S.W.3d at 306. "[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24 (1967). The burden rests with the State "to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Id.*; *see also State v. Rodriguez*, 254 S.W.3d 361, 371 (Tenn. 2008) (reiterating that "the burden on the State to demonstrate that a non-structural constitutional error is harmless remains quite stringent").

To establish the violation, the State admitted Ms. Stigler's statement, conveyed via Ms. Mann, that the Defendant "was contacted via telephone" on June 23, 2021, and "he advised that he moved to 1086 N Highland Ave, Jackson, TN at the beginning of the month." The State also admitted Ms. Stigler's statement that she made "phone contact" with the Defendant "instructing him to move immediately from that residence because it is within a school zone" and that he said that he would move to an unnamed "hotel." These statements provided the only proof that the Defendant had moved to a different residence and that he had been there for more than five days as required by the statute. Without these statements, "the jury would not have had sufficient basis to find that the State had proven" the essential elements of the charged offense beyond a reasonable doubt. *McGill*, 2023 WL 2033804, at *6.[2]

The State points to other documents contained in the TBI records from with the jury could have concluded that the Defendant violated the Sex Offender Registry requirements. We take a moment to note that, at trial, the State argued that the TBI records, which included the violation report and other documentation of the Defendant's history with the Sex Offender Registry were admissible because the statute says they are admissible. This was apparently a reference to Code section 40-39-208, which provides, in pertinent part, as follows:

---

[2] The *McGill* panel did not reach the constitutional question because it concluded that the erroneous admission of the challenged statements under the rules of evidence required reversal. *McGill*, 2023 WL 2033804, at *7.

- 15 -

(g)    In a prosecution for a violation of this section, upon the request of a district attorney general, law enforcement agency, the department of correction or its officers or a court of competent jurisdiction and for any lawful purpose permitted by this part, the records custodian of SOR shall provide the requesting agency with certified copies of specified records being maintained in the registry.

. . . .

(i)    Sexual offender, violent sexual offender and violent juvenile sexual offender registry files and records maintained by the TBI may be digitized. A digitized copy of any original file or record in the TBI's possession shall be deemed to be an original for all purposes, including introduction into evidence in all courts or administrative agencies.

Tenn. Code Ann. § 40-39-208(g), (i).  This statute does not provide that the records are *admissible* but instead provides for the authentication for such records without the need to present the records custodian.  The Supreme Court has held that although "[d]ocuments kept in the regular course of business may ordinarily be admitted at trial despite their hearsay status," "that is not the case if the regularly conducted business activity is the production of evidence for use at trial." *Melendez-Diaz*, 557 U.S. at 321 (citation omitted).  The Court explained that "such records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial." *Id.* at 324.  The Court said that "[a] clerk could by affidavit *authenticate* or provide a copy of an otherwise admissible record, but could not do what the analysts did here: *create* a record for the sole purpose of providing evidence against a defendant." *Id.* at 322-23.  Code section 40-39-208 provides an avenue to do that which is permissible, authenticate and provide a copy of a record by affidavit.

Admittedly, the Defendant's objection to the TBI records did not rest on Confrontation Clause grounds, meaning that he arguably waived any argument regarding their admission on that basis.  That being said, the Defendant did object to the conveying of the contents of the probation violation report on Confrontation Clause grounds.  The State's argument, however, overlooks the fact that each of the documents to which it refers contains hearsay statements by Ms. Stigler.  As we have noted, the Defendant did not object to the admission of the TBI records but did object to the admission of statements made by Ms. Stigler.  More importantly, however, the Supreme Court has stated that "the Sixth Amendment does not permit the prosecution to prove its case via *ex parte* out-of-court affidavits." *Id.* at 329; *California v. Green*, 399 U.S. 149, 156–57 (1970) (stating that "the

- 16 -

particular vice that gave impetus to the confrontation claim was the practice of trying defendants on 'evidence' which consisted solely of ex parte affidavits or depositions . . . , thus denying the defendant the opportunity to challenge his accuser in a face-to-face encounter in front of the trier of fact"). To hold that the TBI records were sufficient to support the Defendant's conviction would sanction trial by affidavit, an action that we are unwilling to take. Under these circumstances, "it is completely impossible for us to say that the State has demonstrated, beyond a reasonable doubt," that the Confrontation Clause violation "did not contribute" to Defendant's conviction. *Chapman*, 386 U.S. at 829. Accordingly, the Defendant has established that he is entitled to relief. The question then becomes what form that relief should take.

## C. Relief

The Defendant, citing *State v. Maclin*, argues that we should dismiss the case because the remaining evidence was insufficient to support his conviction. *See State v. Maclin*, 183 S.W.3d 335, 352 (Tenn. 2006) (reversing conviction of reckless aggravated assault and dismissing case when "the only evidence linking the defendant to the" assault were the testimonial hearsay of deceased victim). The Defendant's argument is attractive given that Ms. Mann's testimony and the TBI records were the only evidence supporting his guilt. We hesitate to offer the State another bite at the apple when the responsibility for the error lies completely with the State and when the State has complete control of managing its proof. Nevertheless, our review of the relevant case law shows that *Maclin* was an outlier. The vast majority of cases remedy Confrontation Clause challenges by remanding for a new trial. In *Maclin*, the victim, the declarant of the offending statements, had died by the time of trial. Because there was no permissible way to admit her statements, which were the only evidence linking *Maclin* to the conviction offenses, dismissal was appropriate. It is impossible to know, however, from the record in this case, whether the State has at its disposable a permissible avenue for admitting Ms. Stigler's statements. It may be that the State could call Ms. Stigler. If no permissible avenue exists for admitting the evidence, then the State may choose to dismiss the charge against the Defendant. Consequently, we reverse the Defendant's conviction but remand the case for further proceedings consistent with this opinion.

## III. Conclusion

Based upon the foregoing, we reverse the judgment and remand the case to the trial court for proceedings consistent with this opinion.

_____ s/ *ROBERT W. WEDEMEYER*___
ROBERT W. WEDEMEYER, JUDGE

- 17 -